## CONTINUOUS METAL TECHNOLOGY, INC., Petitioner,

v.

## UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 10, 1999.

Decided Nov. 19, 1999.

Christopher E. Mohney, Du Bois, for petitioner.

Thomas G.G. Coppolo, St. Mary's, for intervenors, Joseph and Catherine Benini.

Before SMITH, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Continuous Metal Technology, Inc. (CMT) petitions for review from two orders of the Unemployment Compensation Board of Review (Board) dated March 26, 1999 that reversed the decision of the referee and granted Joseph Benini (Mr. Benini) and Catherine Benini (Mrs. Benini) (collectively, Claimants) unemployment compensation benefits. We affirm.

Claimants are husband and wife and were last employed by CMT as an engi-

neering manager and office manager, respectively.[1] In April of 1998, Claimants incorporated SinterFire, Inc., a company designed to distribute bullets. (Reproduced Record "R.R." 249a). SinterFire was formed with the knowledge and assistance of CMT President Roger Smith and Secretary/Treasurer Timothy Smith. (F.F.6). Pursuant to a manufacturing agreement, CMT manufactured bullets for SinterFire. (R.R. 69a–70a).

On September 15, 1998, CMT terminated Claimants' services. (F.F.20). Claimants were not apprised of the reason for their terminations. (F.F.3).

Thereafter, Claimants applied for unemployment compensation benefits with the St. Mary's Job Center (Job Center). On their eligibility review forms, both Claimants answered "no" to question number 10, which asked "[a]re you presently self-employed, working on a commission basis, operating a farm, or working part or full-time for any employer, including the National Guard or Federal Military Reserve?" (R.R. 49a, 50a) (emphasis deleted). In its Employer's Notice of Application/Request for Separation and Wage Information, CMT responded that Claimants are the owners of SinterFire and that since SinterFire was in direct competition with CMT, it believed that the discharges were necessary. (R.R. 52a, 455a).

On August 27, 1998, the Job Center issued two Notices of Determination, concluding that there was no evidence of misconduct on the part of either Claimant and that Claimants were not considered to be self-employed. Accordingly, the Job Center awarded Claimants benefits in their respective amounts. (R.R. 75a, 76a).

CMT appealed to the referee and a hearing on the matter was held December 23, 1998. At the hearing, CMT presented the testimony of Roger and Timothy Smith. The Smiths testified that Claimants were discharged because they were engaging in SinterFire business on CMT time, Mr. Benini made several charges to a CMT corporate credit card that were unauthorized, and Mrs. Benini improperly categorized the charges in CMT's accounting books. Claimants disputed this testimony; maintaining that they conducted SinterFire business from their home and that at no time did the operation of SinterFire interfere with their responsibilities at CMT.

After receiving this testimony, the referee concluded that CMT failed to meet its burden of proof that Claimants engaged in willful misconduct and accordingly, the referee affirmed the Job Center's determination under Section 402(e) of the Unemployment Compensation Law (Law).[2] The referee further concluded, however, that Claimants were engaged in the full-time participation of a business that was their primary source of income. As such, the referee determined that Claimants were self-employed and that therefore, they were not entitled to unemployment compensation benefits under Section 402(h) of the Law, 43 P.S. § 802(h).

Claimants appealed to the Board. In a letter to the Board, Claimants averred that by virtue of their participation in the Self–

---

**1.** The Board issued separate opinions and orders in the Claimants' appeals and CMT petitioned for review from both orders. The Findings of Fact (F.F.), however, are nearly identical in each opinion, the only exception being Finding of Fact No. 1. With respect to Mrs. Benini, the Board found that she was employed by CMT from February of 1997 until September 15, 1998, and that her final salary was $20,000.00 per year. With respect to Mr. Benini, the Board found that he was employed by CMT from February of 1996 until September 15, 1998, and that his final salary was $39,000.00 per year. Unless otherwise noted, our references to the Findings of Fact refer to both of the Board's decisions. On July 30, 1999, the Board filed a notice of non-participation in the respective appeals. By order dated September 2, 1999, we consolidated the petitions for review.

**2.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Employment Assistance (SEA) Program (Program), they were entitled to receive benefits pursuant to Section 5(a)(2) of the Self–Employment Assistance Program Act (Act).[3] By order dated February 4, 1999, the Board remanded the matter back to the referee for further hearings. Specifically, the Board ordered additional testimony regarding Claimants' participation in the Program. (R.R. 221a, 222a).

After reviewing the record made upon remand, the Board found that Claimants were accepted into the Program after fully disclosing their SinterFire activities. As such, the Board determined that the referee erred in denying Claimants benefits on the basis that they were self-employed because in order to participate in the Program, Claimants must devote their full-time activities to SinterFire. The Board further noted that the express terms of the Act provide that benefits cannot be denied while an individual is participating in the Program and that the principles of promissory estoppel require the same result. The Board reasoned that it would be inequitable to assure Claimants that participation in the Program would not jeopardize their benefits and then to deny them benefits because they are self-employed. Accordingly, the Board reversed the referee's order and granted Claimants benefits.

■ On appeal, CMT maintains that (1) Claimants are self-employed and that by virtue of their self-employment, they were improperly admitted into the Program; and (2) Claimants engaged in willful misconduct under Section 402(e) of the Law, 43 P.S. § 802(e). On review, we are limited to determining whether constitutional rights were violated, an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence of record. *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 92, 525 A.2d 841 (1987).

**3.** Act of November 26, 1997, P.L. 504, *as amended*, 43 P.S. § 920.5(a)(2). Section 5(a)(2) of the Act provides that the requirements of Section 402(h) and 404(d)(1) of the

CMT contends that the issue of whether Claimants are self-employed is merely a stepping stone to the actual focal point of its appeal, that being whether Claimants were properly admitted into the Program. We disagree. We conclude, rather, that the threshold issue in the present appeal is whether CMT may challenge the Department of Labor and Industry's (Department) decision to accept Claimants into the Program.

The SEA Program is a statewide program that was designed to assist dislocated workers in becoming self-employed. (R.R. 232a). The Program allows an individual to collect unemployment benefits while participating in it. Section 5(a)(2) of the Act, 43 P.S. § 920.5; R.R. 234a. If an individual is eligible to participate in the Program, the state generates a letter to the individual, who in turn notifies the local SEA Program office of his or her interest. (R.R. 232a, 233a). An individual may only participate in the Program if he or she receives state approval. (R.R. 234a). To continue eligibility for the Program, an individual must dedicate his or her full-time activities to pursuing self-employment. Claimants received such a letter from the state and were accepted into the Program on November 2, 1998. (R.R. 210a, 211a).

The Act defines "program participant" as an individual

(1) who is selected for participation in the program, at the discretion of the Department of Labor and Industry, from among individuals who are eligible for regular benefits and are identified through a worker profiling system as likely to exhaust regular benefits;

(2) who is eligible for funding for participation in the program;

(3) for whom funding for participation in the program is available; and

Law, 43 P.S. §§ 802(h) and 804(d)(1), are not applicable to income earned from self-employment resulting from participation in the Program.

(4) who has not been terminated from or voluntarily left the program.

Section 2 of the Act, 43 P.S. § 920.2. Section 6 of the Act further provides that a Program participant may be terminated from the Program if the individual fails to participate in Program activities or fails to actively engage on a full-time basis in efforts to establish a business and become self-employed. · Section 6 of the Act, 43 P.S. § 920.6.

Section 9 of the Act, 43 P.S. § 920.9, provides that Article V of the Law applies to determinations made under the Act. Article V, entitled *"Determination of Compensation; Appeals; Reviews; Procedure,"* sets forth the Department's duty to notify the claimant and the employer of the validity of a claim for benefits and to notify them of their right to challenge the Department's decision to deny or award regular unemployment compensation benefits. *See* Sections 501–512 of the Law, 43 P.S. §§ 821–832.

■ The problem here, however, is that the Act does not contain any language giving the employer the right to challenge the Department's decision to accept an applicant into the Program. The provisions of the Act merely address the relationship between an applicant and the Department. We question whether a provision providing employers with an available remedy is necessary in light of the fact that Section 8 of the Act provides that the costs of the Program are to be charged to employers as regular benefits under the Law. Section 8 of the Act, 43 P.S. § 920.8. It is not this Court's role, however, to "add provisions which the legislature has omitted unless the phrase is necessary to the construction of the statute." *In re Hancock,* 719 A.2d 1053, 1055 (Pa.Super.1998) (citing *Commonwealth v. Berryman,* 437 Pa.Super. 258, 649 A.2d 961, 965 (1994)).

Our interpretation of the Act is consistent with the Law. Section 501(e) of the Law, 43 P.S. § 821(e), provides that an employer may appeal from a determination contained in any notice required to be furnished to it under Sections 501(a), (c), and (d) of the Law, 43 P.S. § 821(a), (c), and (d). Those Sections generally require that the Department notify the claimant and the employer of the validity of a claim for benefits. They do not require that the Department notify an employer of an applicant's acceptance into the Program. Without such notification to employers, an appeal period to challenge Program admittance cannot be triggered.

Indeed, our review of the record would suggest that the Department did not notify CMT that Claimants were eligible to participate in the Program during Claimants' application process. In fact, at the first referee hearing held December 23, 1998, neither party raised Claimants' participation in the Program. It appears that the first time Claimants' participation in the Program was raised was in their appeals to the Board. As part of the petitions for appeal, Claimants' counsel attached letters addressed to the Job Center. Those letters raised for the first time Claimants' right to receive unemployment benefits pursuant to Section 5(a)(2) of the Act, 43 P.S. § 920.5. (R.R. 198a, 208a).

■ Thus, we conclude that since the Act does not provide an employer with the right to challenge the Department's determination to accept an applicant into the Program, the Board improperly considered CMT's argument that Claimants were improperly admitted. The only issue properly before the Board was the legal effect of Claimants' participation in the Program on their right to receive benefits. As previously stated, the right to receive benefits is governed by Section 5(a)(2) of the Act, 43 P.S. § 920.5. Income earned from self-employment does not disqualify a claimant from receiving benefits. *Id.*

■ We now turn to CMT's argument that Claimants engaged in willful misconduct and that therefore, they are ineligible for benefits under Section 402(e) of the

Law, 43 P.S. § 802(e). We agree with the Board's determination that CMT failed to sustain its burden of proof.

■ Willful misconduct that disqualifies a claimant from receiving unemployment benefits is: (1) wanton or willful disregard for employer's interest; (2) deliberate violation of employer's rules; (3) disregard for standards of behavior that an employer can rightfully expect of an employee; or (4) negligence indicating intentional disregard of employer's interest or employee's duties or obligations. *Caterpillar, Inc. v. Unemployment Compensation Board of Review,* 550 Pa. 115, 703 A.2d 452 (1997). In unemployment compensation proceedings, employer bears the burden of proving willful misconduct. *Finch v. Unemployment Compensation Board of Review,* 692 A.2d 619 (Pa. Cmwlth.1997). The determination of whether certain activity is willful misconduct disqualifying a claimant from receiving unemployment compensation benefits is a question of law, fully reviewable by this Court. *Stop-N-Go of Western Pennsylvania v. Unemployment Compensation Board of Review,* 707 A.2d 560 (Pa. Cmwlth.1998).

Presently, CMT alleged that Claimants spent too much time performing Sinter-Fire activities while at CMT, that Mr. Benini made unauthorized charges on a corporate credit card, and that Mrs. Benini improperly categorized those charges in CMT's accounting books. Claimants disputed CMT's statements. Specifically, both Claimants testified that their Sinter-Fire activities did not interfere with their duties at CMT and that for the most part, they confined their SinterFire activities to their personal time. It was undisputed that the Smiths assisted Claimants in incorporating and starting up SinterFire.

Mrs. Benini testified that the Smiths, who also used the corporate charge account, knew that Mr. Benini had a corporate charge account and that the account was used to purchase items for CMT. Mrs. Benini further stated that when she asked Timothy Smith how to properly categorize some of those charges, she was given a generic answer of "office supplies."

■ The record supports Claimants' version of the facts and the Board found Claimants testimony to be credible. The Board is the ultimate finder of fact and as such, it is within the Board's power to assess the credibility of the testimony presented and to resolve evidentiary conflicts. *Gioia v. Unemployment Compensation Board of Review,* 661 A.2d 34 (Pa.Cmwlth. 1995).[4]

Accordingly, we affirm.[5]

### ORDER

AND NOW, this 19th day of November, 1999, it is hereby ordered that the orders of the Unemployment Compensation Board of Review, appeal numbers B–98–07–H–0131 and B–98–07–H–0132, dated March 26, 1999, are affirmed.

Judge SMITH dissents.

---

4. Additionally, we would merely note that CMT did not aver in its Employer's Notice of Application/Request for Separation and Wage Information that either Claimant engaged in willful misconduct and that this was the reason for their terminations. (R.R. 54a, 57a).

5. It is well settled that we may affirm on different grounds other than those relied upon in the decision below. *Burke v. Department of Transportation, Bureau of Driver Licensing,* 733 A.2d 13, 17 n. 8 (Pa.Cmwlth.1999).