**CITY OF PHILADELPHIA,**

v.

**FRATERNAL ORDER OF POLICE,
LODGE NO. 5, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 6, 2001.
Decided May 29, 2001.

Thomas W. Jennings, Philadelphia, for appellant.

Christopher J. Rusek, Philadelphia, for appellee.

Before SMITH and PELLEGRINI, Judges, and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

On January 17, 2000, an arbitrator determined that the termination of Philadelphia police officer Lamont Fox (Grievant) was not based on just cause and, therefore, set it aside and rescinded it. The Fraternal Order of Police, Lodge No. 5(FOP) [1] appeals from the March 22, 2000 order of the Court of Common Pleas of Philadelphia County (trial court) that (1) vacated the arbitration award to the extent that it required expungement of any and all records relative to the termination of Grievant and the matters leading thereto; and (2) confirmed the arbitration award in all other respects. For the following reasons, we affirm.

The City of Philadelphia (City) employed Grievant as a police officer from June 22, 1987 until his termination on November 22, 1997. At all times relevant, Grievant was assigned to the Five Squad of the 14th District, which is a special unit that operates under the Captain's direct command and handles major crime and special investigations.

On April 20, 1993, a burglary was reported at a leather shop in an area that had been subjected to numerous burglaries. Due to the frequent occurrence of burglaries in that area, numerous members of the Five Squad arrived at the scene of the alarm. There were fourteen to sixteen officers at the scene and a Mr. "J" was arrested at the scene.

Two officers alleged that Grievant had covered his badge with tin foil and stood by while Sergeant "V" assaulted the handcuffed robbery suspect inside the police van in retaliation for the sergeant's pants having been torn during the arrest. Those two officers, however, were the only two out of the fourteen who were present at the burglary scene that corroborated the incident.

Grievant was indicted before a federal grand jury regarding his testimony of the events surrounding that incident, but was ultimately found to be not guilty. All of the officers that the arbitrator referred to in the award were also found not guilty of the charges against them.

After several hearings, which included oral and documentary evidence, the arbitrator discredited the testimony of the two officers, found no documentary evidence even placing Grievant at the scene [2] and found no evidence that Sergeant "V" ever assaulted the suspect. Therefore, having determined that the City failed to establish just cause for Grievant's termination, the arbitrator sustained the grievance.

In addition, the arbitrator ordered that Grievant be reinstated with all rights and benefits to the position he occupied or would have occupied in the Crime Lab, but for his termination. The arbitrator directed that Grievant be made whole for all losses occasioned by the improper termination, including any overtime that he would have worked. Finally, the arbitrator ordered that all references to the improper termination of Grievant and all matters leading

---

1. The FOP is the collective bargaining representative of police officers employed by the City of Philadelphia.

2. Noting that the City as employer was in possession of daily logs completed by the offi-

cers, the arbitrator pointed out that the City never produced them at the hearing and never provided them to Grievant despite his request.

to that improper termination be expunged from any and all records.

On February 16, 2000, the City filed a petition to vacate the award, challenging the award to the extent that it required (1) Grievant's placement in a specific assignment, the Crime Lab, rather than the general one he held at the time of termination, police officer; and (2) expungement of all records, including the Internal Affairs Division (IAD) records. The City did not challenge the arbitrator's order as it pertained to removing references of the discharge from Grievant's employment/personnel records, only the IAD records. It argued that it was prohibited from expunging the IAD records on the basis of the consent decree entered into in *NAACP v. City of Philadelphia*, No. CV-96-6045 (E.D.Pa.1996) (consent decree). (R.R. 30-73a.)

The September 4, 1996 consent decree indicates that the parties entered into a settlement and monitoring agreement under the terms and conditions of the City's response to the NAACP's proposals for reforms within the City's police department. As per that decree, the City agreed to implement certain policies, practices and procedures. One of the monitoring and reporting requirements was that the City provide documents including "[f]inal determinations of the [Police] Commissioner on IAD investigations as reported on Form 75-8, with access where necessary to the IAD, PBI [Police Board of Inquiry] and Firearms Discharge Review files and data bases to monitor IAD and firearms investigations." (R.R. 33a.)

The trial court granted the petition in part and denied it in part. It vacated the award to the extent that it required the City to expunge Grievant's IAD records and confirmed it in all other respects.[3] Citing as support for its decision the federal consent decree's provision requiring the maintenance of IAD records, the trial court concluded that the arbitrator exceeded the scope of his authority in ordering the expungement of "any and all" records. FOP's timely petition for review to this Court followed.

The issues before us are whether the trial court: (1) failed to properly apply the "narrow certiorari" test in reviewing the award; (2) erred in failing to conform all aspects of the award, including that portion requiring expungement of all of Grievant's records; (3) erred in failing to conclude that the arbitrator had authority to order expungement of the IAD records in light of the federal consent decree;[4] and (4) erred in failing to hold that the City waived its arguments regarding the appropriateness of the remedy by failing to raise the issue before the arbitrator. As these issues are not mutually exclusive, we will not expressly address them separately.

■ Both parties agree that the proper review of an Act 111[5] grievance is "narrow certiorari" as set forth in *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995). *Betancourt* provides that the narrow certiorari scope of review limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4)

---

**3.** The City subsequently withdrew its appeal of the reinstatement issue.

**4.** Because we can resolve this case without considering the effect of the consent decree, we decline to consider that issue.

**5.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1-217.10.

deprivation of constitutional rights. The parties disagree, however, as to whether the trial court properly applied this standard.

I

The FOP argues that the trial court erred in determining that the arbitrator exceeded his authority in ordering the expungement of all records relative to Grievant's termination. The FOP contends that the issue of remedy was clearly before the arbitrator and that there were no limitations on his ability to determine an appropriate remedy. *See Pennsylvania State Education Ass'n v. Appalachia Intermediate Unit 08*, 505 Pa. 1, 476 A.2d 360 (1984) (arbitrators have broad powers in fashioning remedies.) It points out that the arbitrator characterized the issue before him as follows: "Was the termination of Lamont Fox based on just cause? If not, what is the appropriate remedy?" (Arbitrator's Opinion and Award at 2.)

Moreover, the FOP points out that a "make whole" remedy contemplates that an aggrieved employee will be placed in the same position as if the unjustified discipline never occurred. *See generally* E. Elkouri & F. Elkouri, How Arbitration Works at 581-583 (5th ed. 1997). Thus, the FOP alleges that the arbitrator's order directing expungement of *all* of the records can hardly seem excessive, onerous or a *per se* abuse of his power or authority.

The City contends that the arbitrator exceeded his discretion in fashioning his own brand of industrial justice because the issue of the Grievant's records was not mutually or adequately submitted to the arbitrator. It notes that this Court has expressly held that arbitrators exceed their jurisdiction when they address questions not submitted to them by the parties. *City of Philadelphia v. City of Philadelphia, Fraternal Order of Police, Lodge No.* 5, 717 A.2d 609 (Pa.Cmwlth.1998) (where issue submitted to arbitrator was whether City had violated collective bargaining agreement by transferring employee, arbitrator exceeded his authority in assessing arbitration costs against the City.)

As for the actual issue before the arbitrator, the City alleges that the sole issue submitted in the present case was whether the City had just cause to discharge Grievant for his perjury before a grand jury. In other words, whether the discharge should have been upheld or whether a lesser form of discipline should have been imposed. In short, it alleges that the arbitrator had the authority only to determine whether just cause existed and whether Grievant should have been reinstated to his job, with or without back pay.

■ After reviewing the record in this matter, we agree with the City that the parties did not directly submit for arbitration the issue of Grievant's IAD records and any expungement thereof. We note that the arbitrator in the award directed the City to expunge all references to Grievant's improper termination and all matters leading thereto from any and all records. The arbitrator did not specify what constituted "any and all records," but the parties and the trial court obviously assumed that he meant to include IAD records, which may or may not have been the case.

In any event, even though the issue of what constituted an appropriate remedy was certainly before the arbitrator, the specific issue of whether any expungement directive should include IAD records was not. Therefore, to the extent that the arbitrator did intend to include IAD records, we reject that inclusion as erroneous and decline to construe the award as including an intent beyond the arbitrator's jurisdiction. *See Marple Twp. v. Delaware County*

*F.O.P. Lodge 27*, 660 A.2d 211 (Pa.Cmwlth. 1995) (arbitrators exceed their jurisdiction when they consider issues not submitted to them by the parties.)

## II

The FOP notes that, in order for an arbitrator to have exceeded his authority, he must have either mandated an illegal act or granted an award which addresses issues outside of the realm of the collective bargaining agreement or beyond the terms and conditions of employment. *Township of Ridley v. Fraternal Order of Police, Lodge No. 27*, 718 A.2d 872 (Pa. Cmwlth.1998), *appeal denied*, 563 Pa. 636, 758 A.2d 666 (1999). It contends that the arbitrator was wholly within his authority and that the award did not exceed the purview of that authority. Moreover, the FOP alleges that every one of the City's arguments against the broad expungement order have been addressed by the Pennsylvania Labor Relations Board (PLRB) in *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 30 Pa. Pub. Employee R. 30179 (Final Order, August 17, 1999), involving Officer DeNoble. (R.R. 25-29a.)

We note that this Court, however, has now rendered a decision on that appeal. Significantly, this Court reversed the PLRB's decision that dismissed the City's exceptions and made final the proposed decision and order directing expungement of an entry in Officer DeNoble's IAD record. *City of Philadelphia v. Pennsylvania Labor Relations Board*, 772 A.2d 460 (Pa. Cmwlth.2001) (*DeNoble*).[6]

In *DeNoble*, the police commissioner discharged DeNoble for conduct unbecoming an officer. Before the arbitrator, the parties agreed to present the issue of whether DeNoble was terminated for just cause. Ultimately, the arbitrator determined that DeNoble was not terminated for just cause. Thus, he sustained the grievance and ordered that DeNoble be returned to his former position with the police department, be made whole in every respect and that his record be expunged and cleared to the fullest extent. The City did not appeal and reinstated DeNoble to his former position and expunged all reference to his termination from his personnel file. The City did not, however, remove the provision in a separately maintained IAD file that a complaint a sergeant lodged of "drugs found in locker" was sustained.

The FOP filed an unfair labor charge with the PLRB, arguing that the City violated Act 111 by refusing to comply with the arbitration award. The City countered by arguing that the aforementioned consent decree prohibited the City from expunging DeNoble's IAD records because the decree requires that the City maintain all final determinations of the police commissioner on IAD investigations. The PLRB, however, concluded that there was nothing in the decree that would prohibit the City from complying with the grievance arbitration award. Thus, it made final a proposed decision and order that determined that the City had committed an unfair labor practice by failing to expunge an entry in DeNoble's IAD record.

On appeal to the Commonwealth Court, the City withdrew its argument that expunging DeNoble's IAD file might render it non-compliant with the aforementioned consent decree presumably because the decree was filed in federal court well after the arbitration award. Ultimately, this Court reversed the PLRB's order, accepting the City's argument that the arbitra-

---

6. We note that Judge Rochelle S. Friedman wrote a dissenting opinion to which President Judge Joseph T. Doyle joined.

tor's decision, when read as a whole, did not indicate an intent to fashion an award reaching beyond the narrow question before the arbitrator, *i.e.* whether DeNoble's termination was for just cause. The Court noted that the arbitrator's entire analysis was based upon accepting the fact that DeNoble mishandled drugs in his locker. Thus, there was "little reason to suppose that the direction that Officer DeNoble's record be cleared 'to the fullest extent' referred to anything other than the record of termination." *DeNoble,* slip op. at 8. In other words, the City was correct in its position that expunging the IAD record would mean that DeNoble, alone among police officers who have committed or have been accused of misconduct, would have no IAD notation.

Finally, this Court stated that it agreed that, if the arbitrator did intend to order expungement of DeNoble's IAD record, such intent would go beyond the scope of the question presented to him. Thus, absent an express basis for intrusion into IAD files, this Court determined that the language of the award should not be interpreted to indicate intent to affect matters beyond the narrow question of just cause for termination. Accordingly, this Court held that the PLRB should have held that the FOP did not meet its burden of showing that the City failed to comply with the award.

We note that in both *DeNoble* and the present case, the expungement of IAD records was not expressly specified. In *DeNoble,* the directive was that the officer's records be cleared to the fullest extent. In the instant case, the directive was that any and all records relative to the termination of Grievant and the matters leading thereto be expunged. Therefore, in both cases, it was not entirely clear whether the re-

spective arbitrators meant to include IAD records in the expungement directives.

In any event, given the fact that the arbitrator in the present case did not specifically designate Grievant's IAD records for expungement and the fact that the issue of expungement of those records was not clearly before the arbitrator, we agree with the trial court that, if the arbitrator did intend to include the IAD records, that directive went beyond his authority.

### III

■  Finally, the FOP argues that the City's challenge to the remedy is untimely in that it did not raise it before the arbitrator, despite the fact that the appropriateness of the remedy was squarely before the arbitrator. The FOP points out that it specifically addressed the appropriateness of the remedy in its brief to the arbitrator. (R.R. 129a.) Thus, it argues that the City waived any issue challenging the remedy. *See City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 677 A.2d 1319 (Pa.Cmwlth.1996).

To the contrary, the City contends that it was not required to place before the arbitrator the fact that he could not direct the City to commit an illegal act. Even assuming that the arbitrator had jurisdiction to consider a range of remedies, the City contends that he certainly did not have authority to order an illegal remedy.

Moreover, the City notes that, even though the FOP mentioned the issue in passing in its post-hearing brief, the arbitrator was provided with no evidence relating to the issue and even advised the parties during the hearing that any relief issues would not be addressed during the hearing.[7] Further, the City notes that be-

---

7. During the hearing, the arbitrator stated that "[i]f I find that the discharge was not

based upon just cause and direct reinstatement and make whole, I shall take the cogni-

cause the post-hearing briefs were submitted simultaneously, the City had no notice that the FOP would be seeking expungement of the IAD records until after the hearing and submission of the post-hearing briefs.

We conclude that the City did not waive any challenge to the remedy. As the City noted, the parties' post-hearing briefs were submitted simultaneously and they did not specifically submit the issue of the status of Grievant's IAD records to the arbitrator for disposition. Thus, we reject the FOP's argument that the City waived any challenge to the specifics of the appropriateness of the remedy.

## IV

■ Having determined that the trial court did not err in vacating the arbitration award to the extent that it required expungement of the IAD records, we affirm the court's order, albeit on different grounds.[8]

### *ORDER*

AND NOW, this 29th day of May, 2001, the March 22, 2000 order the Court of Common Pleas of Philadelphia County is hereby affirmed.

---

zance of what I have to put into such direction and let's continue along that line." (July 12, 1999 Hearing; R.R. 21a.) The discussion preceding the arbitrator's comment reflects that he and counsel for Grievant were discussing what an award should contain in order to make someone whole, *e.g.* reinstating someone to the same department. The status of the IAD records was not discussed.

8. It is well established that this Court may affirm on different grounds if we agree with the result reached by the tribunal below. *Burke v. Department of Transportation, Bureau of Driver Licensing,* 733 A.2d 13 (Pa.Cmwlth. 1999).