691 A.2d 450

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Richard J. BOUCHER, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 1995.

Decided March 25, 1997.

Reargument Denied May 21, 1997.

Timothy P. Wile, Harrisburg and Harold H. Cramer, Philadelphia, for PennDot.

James Cunilio and William B. Sanderson, Jr., Bryn Mawr, for Richard J. Boucher.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal from the order of the Commonwealth Court reversing the order of the Montgomery County Court of Common Pleas, which sustained the suspension of Appellee Richard J. Boucher's operating privileges imposed by the Department of Transportation, Bureau of Driver Licensing pursuant to 75 Pa.C.S. § 1547(b)(1).[1] We reverse and reinstate DOT's suspension of Boucher's operating privileges.

1. The sections of the Implied Consent Law at issue are 75 Pa.C.S. § 1547(a) and (b), which provide as follows:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance.**

(a) **General rule.**–Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) **Suspension for refusal. –**

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

On June 14, 1991, Boucher was arrested and charged with driving under the influence[2] by the Haverford Township Police. Upon his arrest Boucher was advised of his *Miranda* rights[3] and transported to the Haverford Township police station. At the station, Officer Carroll requested that Boucher perform a breathalyzer test. Officer Carroll informed Boucher that in accordance with the Implied Consent Law, if Boucher refused to submit to the test, his operating privileges would be suspended for one year. Officer Carroll did not inform Boucher that his *Miranda* rights were not applicable to the request to perform the breathalyzer test.

Boucher initially assented to the test. The first test result indicated the presence of mouth alcohol and was rejected. On two subsequent test attempts, Boucher failed to produce sufficient breath samples for analysis. Officer Carroll then gave Boucher the opportunity to take a blood test instead, but Boucher refused. Subsequently, Officer Carroll recorded the failed attempts as a refusal to submit to chemical testing. As a refusal was recorded, DOT notified Boucher that his operating privileges would be suspended.

Boucher appealed from the notice of suspension to the common pleas court for a de novo hearing. He challenged the suspension asserting that he had not refused to submit to a chemical test, and that he was not advised by the police officer that his *Miranda* rights did not apply when asked to submit to testing. At the hearing Boucher testified that he believed that he did not have to take the test because he was already arrested and was afraid of the reading that the test might produce. He indicated that the police officer's recitation of his *Miranda* rights had led him to believe that he did not have to give a breath sample. He also testified that he thought he

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

2. 75 Pa.C.S. § 3731.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

was giving a sufficient sample during the three attempts but was hesitant about giving the samples to the officer.

Officer Alan Ross, a certified intoximeter operator with the Haverford Township Police Department, testified that Boucher was informed of the various provisions of the implied consent law, including specific instructions that Boucher's license would be suspended for a year if he failed to cooperate or submit to the test. Officer Ross then proceeded to perform the breathalyzer test.

Officer Ross explained that the first test result indicated the presence of mouth alcohol, a residual amount of alcohol detected in the mouth. A slope detector device on the machine used during the test shut down the system when any mouth alcohol was detected. A second test was then administered, but Boucher did not cooperate during that test. Boucher provided an insufficient breath sample despite being shown how to provide a sample several times. Boucher was given the third test after a brief interval but failed again to give an adequate breath sample. Officer Carroll's request that Boucher submit to a blood test was refused.

At the hearing, the trial judge made the following findings of fact. Boucher was advised of his *Miranda* rights at the time of his arrest. Boucher was informed that pursuant to the Implied Consent Law a refusal to submit to chemical testing would result in the suspension of his operating privileges for one year. By deliberately failing to supply sufficient breath samples, Boucher had refused to submit to chemical testing.

The trial judge determined that Boucher understood from the explanation of his *Miranda* rights that he had the right to remain silent. He concluded, however, that Boucher's testimony did not establish that he felt he was entitled to a lawyer before he submitted to chemical testing. Nor did Boucher's testimony indicate that he felt he needed or wanted a lawyer. Boucher did not testify that he told the police officer that he was confused and that his confusion caused him to give insufficient breath samples. The trial judge found that since Boucher had failed to express his state of confusion regarding

his *Miranda* rights to the police officers, no additional instructions were required under *Commonwealth, Department of Transportation v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), discussed infra. Based on Boucher's testimony, the trial judge concluded that the police officer's reading of *Miranda* rights was not the reason why Boucher failed to provide adequate breath samples. Accordingly, the trial judge denied his appeal and reinstated the suspension of operating privileges.

Boucher then appealed to the Commonwealth Court, asserting that the trial judge erred in affirming the license suspension because he had been read his *Miranda* rights prior to the request for a chemical test when there was no evidence that he had been advised that his *Miranda* rights were inapplicable to the chemical test procedure. The Commonwealth Court reversed the trial court's order because there was no indication in the record that any of the police officers had told Boucher that his *Miranda* rights did not apply to the chemical test. The Commonwealth Court reasoned that in this case DOT had the burden of proving that Boucher had been provided with that information, commonly referred to as the *"O'Connell* warning." Since DOT did not provide such evidence, the license suspension was found to be improper.

■ The phrase, *"O'Connell* warning", is a shorthand expression for the duty imposed upon a police officer to inform a motorist, who has been asked to submit to chemical testing, that the *Miranda* rights are inapplicable to a request for chemical testing under the Implied Consent Law. *Commonwealth, Department of Transportation v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). The *O'Connell* warning must specifically inform a motorist (1) that his driving privileges will be suspended for one year if he refuses chemical testing; and (2) that his *Miranda* rights do not apply to chemical testing. *Commonwealth, Department of Transportation v. Ingram,* 538 Pa. 236, 648 A.2d 285 (1994).

In this case, the Commonwealth Court concluded that the failure of the police officer to give the *O'Connell* warning to

Boucher required reversal of his license suspension. We granted allocatur to address the issue of whether a police officer's failure to explain the inapplicability of *Miranda* rights to chemical testing precludes suspension of the motorist's license under 75 Pa.C.S. § 1547(b) when the motorist intentionally fails to supply an adequate breath sample for chemical testing. For the following reasons, we find that failure of the police to give an *O'Connell* warning does not excuse a motorist's deliberate failure to provide an adequate breath sample after assenting to perform the breathalyzer test.

In reviewing a decision of the trial court in a license suspension case, the standard of review of an appellate court is to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion. *O'Connell*, 521 Pa. at 242, 555 A.2d at 875. Questions of credibility are for the trial court. *Id.*

To sustain a license suspension under 75 Pa.C.S. § 1547(b), DOT must establish that the motorist (1) was arrested for driving under the influence of alcohol, (2) was asked to submit to a breathalyzer test, (3) refused to do so, and (4) was specifically warned that refusal would result in the revocation of his driver's license. When that burden has been met, the motorist must prove that his refusal was not knowing or conscious or that he was physically unable to take the test. *Id.*, at 248, 555 A.2d at 876.

According to the factual findings of the trial court, DOT met its burden of proof. At issue in this case is whether or not Boucher met his burden of proof by showing that he was incapable of making a knowing and conscious refusal.

Boucher asserts that his deemed refusal based on his deliberate failure to provide a sufficient breath sample for the breathalyzer was not knowing and conscious because the police officers did not advise him that the *Miranda* rights did not apply to the test. He claims that he was confused by the recitation of his *Miranda* rights and that this confusion led directly to his failure to give a sufficient breath sample. DOT

counters that a police officer is not required to provide an *O'Connell* warning to a motorist who affirmatively assents to the requested chemical test despite being read the *Miranda* warnings. DOT further asserts that the fact that no *O'Connell* warning was given does not render the motorist's deemed refusal of that test, occasioned by the motorist's failure to provide sufficient breath samples for a complete and valid test, unknowing and unconscious for purposes of *O'Connell*.

The *O'Connell* decision has engendered much confusion over its application under varying factual circumstances. We recently undertook an effort to eliminate the confusion through extensive examination of the *O'Connell* decision and its progeny in *Commonwealth, Department of Transportation v. Scott*, 546 Pa. 241, 684 A.2d 539 (1996). In summary, we stated that the lineage of decisions beginning with *O'Connell* have established the following principles:

> (1) the provisions of the Implied Consent Law which require a motorist to submit to chemical sobriety testing or face the temporary loss of driving privileges have the potential to create confusion for the motorist; (2) in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges; (3) the duty of the officer to provide the *O'Connell* warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his *Miranda* rights.

*Scott*, 546 Pa. at 253, 684 A.2d at 545.

We held in *Scott* that whenever a motorist is requested to submit to chemical sobriety testing, the motorist must be provided with *O'Connell* warnings regardless of whether *Mi-*

*randa* rights have been given and regardless of whether the motorist exhibits confusion concerning his rights when asked to submit to testing. *Id.,* at 252, 684 A.2d at 545–546. Once a motorist has been properly advised of the *O'Connell* warnings, a refusal to submit to chemical testing under the terms of the Implied Consent Law will not be excused as unknowing based upon the motorist's subjective beliefs regarding the interplay between the Implied Consent Law and the rights under *Miranda. Id.,* at 255, 684 A.2d at 546.

The *Scott* decision did not address the issue presented in this case, however, because the motorist in *Scott* did not assent to the request for testing.[4] The motorist in *Scott* flatly refused to submit to a blood test without consultation with his attorney even after the *O'Connell* warnings were given. The *O'Connell* warnings were repeated twice by different police officers, but the motorist continued to refuse to submit to the blood test and to demand that he see his attorney.

In this case, Boucher did not refuse to submit to the breathalyzer test. Instead, Boucher deliberately failed to provide sufficient breath samples for the test. Although Boucher tried to give the appearance of cooperation with the police officer, he gave inadequate breath samples during multiple attempts to administer the test. His failure to supply a sufficient breath sample for any of the tests was a deemed refusal to submit to testing. See *Pappas v. Commonwealth, Department of Transportation,* 669 A.2d 504 (Pa.Cmwlth. 1996); *Department of Transportation v. Gross,* 146 Pa. Cmwlth. 1, 605 A.2d 433 (1991).

■ Although the police officer did not inform Boucher that his *Miranda* rights did not apply to chemical testing, Boucher did not refuse to submit to testing. He assented to testing,

4. Similarly, in each of the cases discussed in *Scott* the motorist had refused to submit to testing for the purposes of determining blood alcohol content. See, *Commonwealth v. Ingram,* 538 Pa. 236, 648 A.2d 285 (1994), *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992), *Commonwealth v. McFadden,* 522 Pa. 100, 559 A.2d 924 (1989), and *Commonwealth v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

but sought to skew the test results.[5] The deemed refusal was based on his own surreptitious conduct, rather than conduct of the police that rendered him incapable of making a knowing and conscious refusal. Accordingly, Boucher failed to meet his burden of proving that he had refused to submit to testing and that he was incapable of making a knowing and conscious refusal.

In *Scott*, we recognized that in the absence of *O'Connell* warnings a motorist may not make a knowing and conscious decision to refuse to submit to chemical testing. Where, as here, the motorist has not refused to submit to testing, the policy concerns and rationale underlying *Scott* would not be served by treating assent of a motorist as the equivalent of a refusal. We specifically decline to extend the *Scott* analysis to situations in which a motorist agrees to submit to chemical testing upon request, but intentionally sabotages the test.

Based upon the foregoing, we reverse the order of the Commonwealth Court and reinstate the license suspension.

NIX, former C.J., did not participate in the decision of this case.

CAPPY, J., files a dissenting opinion.

CAPPY, Justice, dissenting.

I dissent.

The Majority refuses to apply the rule of law of *Commonwealth v. Scott*, 546 Pa. 241, 684 A.2d 539 (1996) to the case *sub judice*. The Majority states that "the policy concerns and rationale underlying *Scott* would not be served" by extending the *Scott* decision to a case where the motorist "intentionally sabotages the [breathalyzer] test." *Id.*, at 449, 691 A.2d at

---

5. Boucher claims that he was exercising his constitutional right against self-incrimination by pretending to submit to breathalyzer tests. This argument is mere obfuscation. Simply stated, Boucher attempted to "beat" the test in hopes that the reading of the breathalyzer would fall below the range required to establish that he was driving under the influence of alcohol. The testing mechanism was simply too sophisticated. To elevate Boucher's conduct from pretense to an exercise of his right to remain silent would be unreasonable.

454. In reaching this conclusion, the Majority permits the desire to punish what it perceives as a deceptive motorist to overshadow the purpose of the rule of law in *Scott.* Therefore, I am compelled to dissent.

In *Scott,* this court reviewed the confusion that was generated by the decision in *Commonwealth v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989) [1] and held that:

> [W]henever a motorist has been requested to submit to chemical sobriety testing, the motorist must be provided *O'Connell* warnings regardless of whether *Miranda* warnings have been given, and, regardless of whether the motorist exhibits confusion concerning his rights when asked to submit to chemical sobriety testing.

*Scott,* at 254, 684 A.2d at 545.

Thus, with the decision in *Scott,* this court hoped to eliminate the subjective problems of determining when a motorist is confused which had plagued law enforcement and the courts since the *O'Connell* warnings were mandated in informed consent cases. However, the Majority today chooses to ignore the objective clear standard established in *Scott* and reintroduce a subjective element to this area of law. Looking at the particular circumstances of this case, the Majority's decision is unwarranted.

Appellee herein was arrested and charged with driving under the influence on June 14, 1991, by the Haverford Township Police. Upon his arrest, appellee was advised of his *Miranda* rights and transported to the Haverford Township police station. At the station, Officer Carroll requested appellee perform a breathalyzer test. Officer Carroll informed appellee that in accordance with the Implied Consent Law, if appellee refused to submit to the test, his operating privileges

---

1. In *O'Connell,* this court held that when a motorist is requested to submit to chemical testing under the provisions of the Pennsylvania Implied Consent Law, 75 Pa.C.S. § 1547, the law enforcement officer making the request has a duty to explain to the motorist that the rights guaranteed to the motorist, as set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are inapplicable to a request for chemical testing under the Implied Consent Law. This holding has subsequently been referred to by the phase *"O'Connell* warnings."

would be suspended for one year. The record shows that Officer Carroll failed to inform appellee that his *Miranda* rights were *not* applicable to the request to perform the breathalyzer test and that appellee assented to the test. However, on three separate test attempts, appellee failed to produce sufficient breath for analysis. Officer Carroll then provided appellee with an opportunity to take a blood test but appellee refused. Subsequently, Officer Carroll recorded the failed attempts as a refusal to submit to chemical testing. As a refusal was recorded, the Department of Transportation, Bureau of Driver's Licensing (DOT) notified appellee that his operating privileges would be suspended. Appellee appealed from the notice of suspension to the Court of Common Pleas for a de novo hearing. At the hearing, the trial court made findings of fact and concluded that appellee was advised of his *Miranda* rights at the time of his arrest. (R.R. 52a).[2] Additionally, the court found that appellee was advised that pursuant to the Implied Consent Law, a refusal to submit to chemical sobriety testing would result in the suspension of his operating privileges for one year. (R.R. 52a). Further, the court concluded that Appellee did, by purposely failing to supply sufficient breath samples, refuse to submit to chemical testing, (R.R. 53a) and that appellee's testimony, regarding his confusion once he was given *Miranda* warnings and then asked to submit to the breathalyzer test, was credible. (R.R. 55a). Notwithstanding the fact that appellee testified that his refusal was an exercise of his "right to remain silent." (R.R. 55a), the trial court found that appellee had failed to express to Officer Carroll his state of confusion regarding his *Miranda* rights. (R.R. 56a). The trial court then concluded that as appellee failed to reveal his confusion to the officer, *or to explain that this confusion was the basis for his failing to perform the chemical test, the officer had no duty to provide appellee with O'Connell Warnings.* (R.R. 56a). Accordingly, the trial court denied appellee's appeal and reinstated the suspension of operating privileges.

2. The initials R.R. refer to the reproduced record containing the transcript from the hearing of February 7, 1994 before the trial court.

On appeal, the Commonwealth Court reversed the decision of the trial court finding that the lower court had committed an error of law. The Commonwealth Court found that the duty to provide a motorist with *O'Connell* Warnings is not activated upon an overt display of confusion, but rather, is activated upon the request to submit to chemical sobriety testing following the explanation of *Miranda* rights.

In contrast to the Majority, I would affirm the decision of the learned Commonwealth Court as it is consistent with this court's recent decision in *Scott*. In the case *sub judice*, appellee had been advised of his *Miranda* rights, was asked to submit to a breathalyzer, was not advised of his *O'Connell* warnings and had purposely failed to provide sufficient breath samples for testing as an exercise of his right to remain silent. Based upon the principles this court has developed from *O'Connell* through *Scott*, appellee's refusal to submit to chemical sobriety testing was not a knowing and conscious decision as a matter of law.

The Majority creates an exception for the instant case based upon the fact that appellee originally agreed to take the breathalyzer and never expressed to the arresting officer his belief that in refusing to supply sufficient breath samples, he was exercising his right to remain silent. I cannot agree with the Majority that the circumstances of this case present a situation warranting an exception to the legal principles so recently established in *Scott*. The arresting officer had an affirmative duty to provide *O'Connell* warnings when he requested appellee submit to the breathalyzer test. The officer's failure to provide *O'Connell* warnings cannot be overcome by the conduct of appellee in assenting to the test and then failing to provide sufficient breath samples. The Majority opinion argues that although the officer failed to provide Appellee with *O'Connell* warnings, appellee's conduct in purposely attempting to skew the test results by failing to provide sufficient breath samples should be deemed a knowing and conscious refusal. The obvious absence of *O'Connell* warnings leads me to a contrary conclusion. Although it appears more likely than not that appellee was in fact attempting to "beat

the machine," without having first been warned of the consequences of his actions through the simple explanation of his *O'Connell* warnings, I cannot, given the circumstances of this case, conclude that appellee's actions manifested a knowing and conscious refusal. The simple fact is that the arresting officer failed to provide *O'Connell* warnings as mandated by *Scott.* Without the required warnings, appellee's subsequent conduct, whether intentional or inadvertant, is irrelevant as a matter of law.

Given the circumstances of this case, the position of the Majority undercuts the very purpose of the *O'Connell* warnings and the mandate set forth in our recent *Scott* decision. Accordingly, as I would affirm the decision of the Commonwealth Court. I respectfully dissent.