J-A05027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA,, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| REINALDO HERRERA, | |
| Appellant | No. 1818 WDA 2015 |

Appeal from the Judgment of Sentence Entered November 9, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001160-2015

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED MAY 09, 2017**

Appellant, Reinaldo Herrera, appeals from the judgement of sentence of 90 days' intermediate punishment, a concurrent term of 6 months' probation, and a $1500 fine,[1] imposed following his conviction for three counts of driving under influence of alcohol or controlled substance (DUI), 75 Pa.C.S. § 3802, all of which stemmed from the same incident. Appellant claims the evidence was legally insufficient to support his conviction. After careful review, we affirm.

The trial court summarized the facts adduced at trial, as well as the court's relevant credibility determinations, as follows:

_____

[1] Appellant was also ordered to attend safe driving school, pay court costs, undergo a drug and alcohol evaluation, and to comply with any resulting treatment recommendations from that evaluation.

The facts presented to this [c]ourt and found to be credible are as follows: on October 25, 2014, officers responded to a one-vehicle motorcycle accident on Steuben Street in the City of Pittsburgh. Officer Loughran, an officer with the City of Pittsburgh since 2005, testified that when he arrived on the scene of the accident, he found a damaged motorcycle resting near a cement median in the middle of the road. He next noticed [Appellant] speaking with medics, and observed a cut on [Appellant]'s head. When he approached [Appellant], Officer Loughran stated [that Appellant] smelled of alcohol, and recalled [Appellant's] stating he had been coming from a friend's house in Mt. Washington. Officer Loughran further testified that the damage to the motorcycle was so extensive that it had to be towed.

Officer Timothy Bateman, an officer with the City of Pittsburgh for 16 years, testified that during his time with the department he has made over 200 DUI arrests and has significant experience with DUI offenders. He testified that upon arriving on the scene, he observed that the motorcycle had a damaged wheel well rendering it inoperable. He stated that it was a well-lit, clear, and dry night, and that he observed no debris in the roadway that could have caused the accident. He determined that the owner of the motorcycle was [Appellant], and that he was the operator of the vehicle, as there were no other individuals in the vicinity of the accident. Based upon his experience, Officer Bateman testified that typically, DUI offenders can emit an odor of alcoholic beverages, have glassy or bloodshot eyes, slurred speech, difficulty standing, walking, or have an unsteady gait. Officer Bateman testified that he witnessed many of these traits while observing and talking to [Appellant], including glassy eyes, slurred speech and the odor of alcohol. He also observed that [Appellant] was "loud" and "a little angry," and that "his demeanor was that of someone who appeared to be intoxicated." [N.T., 9/25/15, at 20].

Due to his observations, Officer Bateman testified that he requested that [Appellant] perform a series of field sobriety tests. [Appellant] first attempted the finger-to-nose test, but he was unable to successfully complete this test. On his first attempt, [Appellant] missed his nose and touched his upper lip and on his second attempt, he "didn't know where his right or left index finger was." [*Id.* at 21]. [Appellant] then attempted the nine-step heel-to-toe test. He also unsuccessfully completed this test by walking off of the straight line, failing to touch heel

to toe, and stopping the test prior to completion. Finally, Officer Bateman requested [that Appellant] perform the one-legged stand test and [Appellant] stated that he had a bad leg. At this point, [Appellant] became "verbal, combative, and abusive" toward Officer Bateman and his partner. [***Id.*** at 22]. [Appellant] was placed under arrest. After [Appellant] refused medical attention, he was transported [to a police station] for a breath test.

Officer Kevin Walters, currently a Patrol Sergeant for the City of Pittsburgh, has a total of fifteen years' experience as a City of Pittsburgh Police Officer including seven years' experience in traffic accident investigation. With regard to DUI offenders, Officer Walters received certification to operate three different breath test instruments and has completed over 200 hours in DUI related training. Officer Walters was working the night shift on October 25, 2014 when [Appellant] was brought in for a breathalyzer test. Officer Walters testified [that Appellant] was placed in a cell for the standard 20-minute observation, after which he was asked if he would submit to the breathalyzer. [Appellant] refused. At this point, Officer Walters read the DL-26[2] and the ***O'Connell*** warnings[3] to [Appellant]. [Appellant] again refused to submit to the breathalyzer test.

_____

[2] The DL-26 is a form issued by Pennsylvania's Department of Transportation describing Pennsylvania's implied consent law, 75 Pa.C.S. § 1547.

[3] Our Supreme Court has stated:

The phrase, "***O'Connell*** warning", is a shorthand expression for the duty imposed upon a police officer to inform a motorist, who has been asked to submit to chemical testing, that the ***Miranda*** rights are inapplicable to a request for chemical testing under the Implied Consent Law. ***Commonwealth, Department of Transportation v. O'Connell***, 521 Pa. 242, 555 A.2d 873 (1989). The ***O'Connell*** warning must specifically inform a motorist (1) that his driving privileges will be suspended for one year if he refuses chemical testing; and (2) that his ***Miranda*** rights do not apply to chemical testing. ***Commonwealth, Department of Transportation v. Ingram***, 538 Pa. 236, 648 A.2d 285 (1994).

*(Footnote Continued Next Page)*

During the 20-minute observation period, Officer Walters noted that [Appellant] emitted a moderate odor of alcoholic beverages, had glassy, bloodshot eyes and exhibited conduct consistent with someone who is impaired. Officer Walters noted that moderate odor of alcohol is consistent with someone who has had more than just a few drinks. After the second refusal, [Appellant] remained in the holding cell until his ride home arrived.

[Appellant] waived his right not to testify and took the stand in his defense. [Appellant testified that he] was riding his 2011 Harley Davidson through the West End on October 25, 2014 when a blue car came up on his right. He stated that he looked sideways toward the car [and] then he had the accident. He further testified that he does not recall the actual accident. [Appellant] testified he is an experienced rider, and has been riding motorcycles since he was a child. [Appellant] testified that he had consumed two and a half beers prior to operating his motorcycle and was running late to meet his ex-wife and son.

[Appellant] recalled hitting his head during the accident, and had a vague recollection of the events following the accident. [Appellant] admitted he did not seek medical attention until some point after the accident. He received treatment for an infection from his superficial leg wounds.

This [c]ourt did not find [Appellant]'s testimony to be credible as a whole, however, there are portions of his testimony that were credible. Specifically, this [c]ourt finds that [Appellant]'s testimony as to his operation of the motorcycle at the time of the accident to be credible. Further, [Appellant]'s testimony that he had consumed alcohol prior to operating his motorcycle was credible. This [c]ourt found that [Appellant]'s testimony as to the amount of alcohol he consumed, the presence of a blue vehicle, and the extent of his injuries not to be credible.

Trial Court Opinion (TCO), 6/7/16, at 2-6 (some internal citations omitted).

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

_**Commonwealth, Dept. of Transp., Bureau of Driver Licensing v. Boucher**_, 691 A.2d 450, 452 (Pa. 1997) (referencing _**Miranda v. Arizona**_, 384 U.S. 436 (1966)).

Appellant was ultimately charged with three counts of DUI[4] and reckless driving. Following a non-jury trial held on September 25, 2015, he was convicted of all DUI counts, but found not guilty of reckless driving. On November 9, 2015, he was sentenced as stated above. Appellant filed a timely notice of appeal on November 19, 2015, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on December 9, 2015. The trial court issued its Rule 1925(a) opinion on June 7, 2016.

Appellant now presents the following question for our review:

> Under Pennsylvania law, does the Commonwealth survive a challenge to the sufficiency of the evidence of [DUI] charges, when the Commonwealth fails to establish [that] Appellant was intoxicated while operating a vehicle?

Appellant's Brief at 4.

Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the

---

[4] The multiplicity of DUI counts charged was a consequence of the various sentencing provisions which applied to the circumstances attendant to the underlying DUI offense. *See* 75 Pa.C.S. § 3802(a)(1) (defining the underlying DUI offense); *see* 75 Pa.C.S. § 3803(b) (grading refusals to submit to a blood or breath test to determine blood-alcohol content (B.A.C.) and DUI offenses involving an accident causing injury as misdemeanors of the first degree, rather than the baseline second-degree misdemeanor grading applying to basic first-time DUI offenses); *see* 75 Pa.C.S. § 3804(b) (defining the applicable penalties for a DUI involving an accident causing injuries); *and see* 75 Pa.C.S. § 3804(c) (defining the applicable penalties for a DUI involving a refusal to submit to B.A.C. testing).

verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law.  When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant's convictions all fell under the general impairment provision of the DUI law, which states: "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."  75 Pa.C.S. § 3802(a)(1).  Our Supreme Court has clarified that "subsection 3802(a)(1) is an 'at the time of driving' offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol."  *Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).  Moreover,

[t]he types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior,  including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. … The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her

experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol….

*Id.* at 879.

Regarding Appellant's challenge to the sufficiency of the evidence, the trial court found as follows:

> In this matter, the evidence presented established that [Appellant] operated his motorcycle and was rendered incapable of safely doing so due to the consumption of alcohol. First, [Appellant] admitted to operating his motorcycle at the time of the accident, thus the first element of DUI-general impairment, that the accused was operating a vehicle, is satisfied. With regard to being rendered incapable of safely operating his motorcycle due to his alcohol consumption, the testimony of Officer Bateman and Officer Walters established that he was impaired. Officer Bateman indicated that [Appellant] emitted a moderate odor of alcohol, had glassy and bloodshot eyes, and failed two field sobriety tests. Further, he testified that [Appellant] exhibited the demeanor of an individual who was impaired due to alcohol consumption. Officer Walters corroborated Officer Bateman's observations by testifying that [Appellant] emitted a moderate odor of alcoholic beverages, had glassy bloodshot eyes, and behaved consistent with an individual who is impaired. Based upon these facts, the evidence was sufficient to support a conviction of DUI-general impairment.

TCO at 7.

Appellant contends, however, that:

> Here, the lower [c]ourt relied on the testimony from two officers that stated … Appellant had a moderate odor of alcohol emanating from his person, glassy eyes, failed two field sobriety tests and behaved in a manner consistent with a person being intoxicated.
>
> A closer review of the trial testimony reveals that Officer Bateman only stated that the Appellant had glassy eyes as opposed to bloodshot eyes. Of the many observations Officer

- 7 -

Bateman states [that] he notices in people who are under the influence, Officer Bateman did not notice that … Appellant had difficulty standing, an unsteady gait, was yelling or having difficulty walking or talking. The officers did not observe … Appellant driving or observe the accident. No witnesses were produced that offered testimony of … Appellant driving or were witnesses to the accident.

Further, Officer Bateman admitted that he was unable to determine whether a person with a head injury such as … Appellant, would have slurred speech or trouble with words as a result of [the] head injury. Similarly, Officer Bateman was unable to determine whether a person with a head injury[] would have trouble with swaying or balance. Officer Bateman finally admitted that a person with a leg injury would have difficulty standing.

In sum, the same characteristics that led Officer Bateman to believe that … Appellant was intoxicated could have also stemmed from the injuries resulting from the accident, which was established through cross examination testimony from Officer Bateman and testimony from … Appellant.

Appellant's Brief at 10-11.

Appellant's arguments are unconvincing. First, Appellant cites to no authority suggesting that the observation of glassy eyes is substantially different from an observation of bloodshot or bloodshot *and* glassy eyes. As the **Segida** Court indicated, there is no exclusive list of factors which can be considered in a prosecution for general impairment under the DUI statute. Perhaps the presence of glassy eyes indicates a lesser degree of intoxication than bloodshot eyes, or maybe some intoxicated persons' eyes appear glassy and others' bloodshot, while some intoxicated persons' eyes exhibit both symptoms simultaneously. Whatever the truth of the matter, Appellant has simply failed to offer any explanation regarding how the inference of intoxication is significantly impacted by the observation of exclusively glassy,

rather than bloodshot, or glassy and bloodshot eyes. Accordingly, we attach no significance to the lower court's misstatement that Officer Bateman had observed Appellant's bloodshot eyes. Regardless, Officer Walters did, in fact, observe that Appellant had "glassy, bloodshot" eyes when he was taken to the police station for B.A.C. testing. N.T., 9/25/15, at 39.

Second, Appellant's summary of conditions or behaviors which were *not observed* by Officer Bateman is wholly irrelevant. Appellant cites to no legal authority suggesting that all *possible* indications of intoxication must be present to sustain a conviction under Section 3802(a)(1) on sufficiency grounds. As noted by the trial court, Appellant displayed several signs of intoxication. Appellant emitted an odor of alcohol noticed by both officers. He exhibited glassy eyes to Officer Bateman, and bloodshot, glassy eyes to Officer Walters. Appellant also failed two field sobriety tests. Additionally, Officer Bateman testified that, during his interaction with Appellant, Appellant was "[l]oud, a little angry, [and] not following directions." N.T., 9/25/15, at 20. Moreover, Appellant admitted, during the course of his own testimony, that he had consumed approximately 2½ beers just prior to operating his motorcycle. *Id.* at 50. Such evidence is, collectively, sufficient to establish his violation of Section 3802(a)(1).

Third, Appellant's concern regarding Officer Bateman's failure to observe his driving is of no consequence in the circumstances of this case. Appellant was discovered at the scene of a motorcycle accident. Officer Bateman determined that Appellant owned the motorcycle involved. N.T.,

- 9 -

9/25/15, at 18. Officer Bateman testified, without any objection by Appellant, that he had told another officer that he was driving. *Id.* at 20. Indeed, he admitted, during his own testimony, that he was riding his motorcycle just prior to being involved in an accident. *Id.* at 49. Simply put, there was no dispute at trial that Appellant was operating the motorcycle at the time it crashed. His claim that "[n]o witnesses were produced that offered testimony of … Appellant driving or were witnesses to the accident," unsuccessfully, and somewhat frivolously, attempts to obfuscate this undisputed fact. Appellant's Brief at 10.

Fourth, Appellant did offer circumstantial evidence, through his own testimony, and through his cross-examination of Officer Bateman, that the signs of his intoxication might also have been consistent with a preexisting leg injury and/or a head injury sustained in the accident. As noted by the Commonwealth, however, Appellant twice refused medical assistance at the scene. N.T., 9/25/15, at 23. He also never subsequently sought treatment for a head injury sustained in the accident. *Id.* at 65 (Appellant's stating that he only sought treatment for a leg injury).

Under sufficiency review, we must "view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Widmer*, 744 A.2d at 751. It was not at all unreasonable in this case for the trial court to conclude that Appellant's behavior and other characteristics of intoxication were in fact due to his intoxication, rather than to any preexisting injuries or

injuries sustained in the accident. Moreover, to the extent that Appellant is attempting to challenge the weight afforded to this evidence by the trial court, we deem such arguments waived due to his failure to preserve a weight-of-the-evidence claim in his Rule 1925(b) statement. ***See Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

Finally, Appellant argues that his accident resulted from the actions of another driver, and was not proven to be a result of his intoxication. While in certain cases, evidence pertaining to the causation of an accident may support an inference of intoxication, we see nothing in the trial court's analysis in this case which suggests that it based its verdict on Appellant's involvement in the accident. Furthermore, Section 3802(a)(1) does not contain any elements requiring such a showing. Indeed, it may very well be the case that Appellant's accident was caused by another individual. Nevertheless, even if innocent in that respect, Appellant could still be held accountable for driving his motorcycle while intoxicated to the extent that it rendered him incapable of safe driving. Indeed, this is reflected in the trial court's determination that Appellant was guilty of DUI, but not guilty of reckless driving. For all of the above reasons, we conclude that Appellant's sufficiency claim is meritless.

Judgment of sentence ***affirmed***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/9/2017