**[J-89-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| JOHN THOMAS LINKOSKY, | : | No. 16 WAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| | : | December 5, 2019 at No. 98 CD |
| v. | : | 2019, affirming the Order of the |
| | : | Court of Common Pleas of |
| | : | Allegheny County entered January |
| COMMONWEALTH OF PENNSYLVANIA, | : | 17, 2019 at No. S.A. 18-1015. |
| DEPARTMENT OF TRANSPORTATION, | : | |
| BUREAU OF DRIVER LICENSING, | : | |
| | : | |
| Appellant | : | ARGUED:  October 21, 2020 |

**OPINION**

**JUSTICE BAER**                    **DECIDED:  MARCH 25, 2021**

This appeal presents the issue of whether the Pennsylvania Department of Transportation ("Department") erred by denying a licensee's application for a duplicate camera card after he lost the camera card and, by the time he sought its replacement, his operating privileges had been suspended in the State of Ohio for driving under the influence.[1]  For the reasons set forth herein, we hold that the Department did not err by denying the application for a duplicate camera card.  Accordingly, we reverse the order

---

[1] As discussed in detail *infra*, the Department issues a camera card to a qualified applicant for renewal, replacement or initial issuance of a driver's license.  67 Pa. Code § 73.3(b)(1). The camera card is valid as a driver's license for sixty days from the date of validation by the Department.  *Id.*

of the Commonwealth Court, which affirmed the trial court's sustaining of the licensee's statutory appeal.

## *I. Background*

The material facts of this case are undisputed. On October 4, 2018, Appellee John Thomas Linkosky applied for renewal of his Pennsylvania driver's license. The Department granted the renewal application and issued him a temporary internet driver's license, which was valid from October 4 to October 18, 2018. The accompanying instructions advised Linkosky that he would receive a camera card within ten days. The instructions further directed Linkosky to present the camera card at any Department photo center and have a new photo taken for purposes of receiving a renewed photo driver's license.[2]

On October 16, 2018, Linkosky pled guilty in Ohio to a violation of Ohio Rev. Code § 4511.19 (relating to driving while under the influence of alcohol or drugs) ("DUI"). As a result, his operating privileges were suspended in that state for a period of twelve months, with credit awarded to him from June 30, 2018.

At some point during October 2018, Linkosky received his camera card from the Department, but misplaced it. On December 4, 2018, nearly two months after his Ohio DUI conviction, Linkosky filed an application with the Department seeking a replacement camera card. By notice mailed December 11, 2018, the Department denied Linkosky's request, opining that as of the date of his application for a replacement camera card, the National Driver Register ("NDR" or "Register") indicated that his operating privileges were

---

[2] A "[p]hoto center" is a "location designated by the Department where applicants for renewal, replacement or initial issuance of a driver's license may surrender their camera card, have their photograph taken and receive a photographic driver's license." 67 Pa. Code § 73.2.

suspended in Ohio.[3]  The Department relied upon Section 1503(1) of the Vehicle Code, which provides that the "[D]epartment shall not issue a driver's license to, or renew the driver's license of, any person . . . [w]hose operating privilege is suspended or revoked in this or any other state."  75 Pa.C.S. § 1503(a)(1).

On December 12, 2018, Linkosky filed a statutory appeal from the Department's denial of his application for a duplicate camera card.  The trial court held a hearing on January 17, 2019, during which the aforementioned facts were established.  Following the hearing, the common pleas court sustained Linkosky's appeal, and ordered the Department to provide Linkosky with a duplicate camera card and issue him a driver's license upon his presentation of the camera card at a photo license center.

The Department timely filed a notice of appeal.  In the common pleas court's subsequently issued opinion, the court found that the Department "incorrectly mischaracterized [Linkosky's] request for a duplicate or substitute camera card as a second request for license renewal."  Trial Court Opinion, 4/25/2019, at 2-3.  The court reasoned that this mischaracterization caused the Department to check the NDR, which it otherwise would not have done.  Because Linkosky was not requesting renewal of his driving privileges, the common pleas court held that the Department erred by denying Linkosky's request for the duplicate camera card pursuant to Section 1503(a)(1), which prohibits the Department from issuing or renewing a driver's license of a person whose operating privilege has been suspended or revoked.

---

[3]  As explained *infra*, the NDR is a division of the National Center for Statistics and Analysis under the National Highway Traffic Safety Administration.  The NDR maintains the computerized database known as the Problem Driver Pointer System, which contains data on individuals whose motor vehicle privileges have been revoked, suspended, cancelled or denied or who have been convicted of serious traffic-related offenses.  *See* https://one.nhtsa.gov/Data/National-Driver-Register-(NDR), last accessed 3/23/2021; *see also* 23 CFR §§ 1327.1 -1327.7 (setting forth procedures for participating in and receiving information from the National Driver Register Problem Driver Pointer System).

Instead, according to the common pleas court, the Department was required to issue Linkosky the duplicate camera card pursuant to Section 1513 of the Vehicle Code, which does not require the Department to check the Register before issuing a replacement license. Section 1513, entitled "Duplicate and substitute drivers' licenses and learners' permits," provides:

> (a) General rule. -- If a learner's permit or driver's license issued under the provisions of this chapter is mutilated, lost, stolen, destroyed or becomes illegible, the person to whom it was issued, upon furnishing proof satisfactory to the department that the license or permit has been mutilated, lost, stolen, destroyed, or has become illegible, shall obtain a duplicate or substitute license or permit upon payment of the required fee.
>
> (b) Return of original. -- If a duplicate or substitute learner's permit or driver's license has been issued, any person who finds or otherwise obtains possession of the original shall return the original to the department.

75 Pa.C.S. § 1513.

The Commonwealth Court affirmed the common pleas court's order. *Linkosky v. Commonwealth*, 222 A.3d 1213 (Pa. Cmwlth. 2019). Initially, the court observed that the case was moot because Linkosky's driving privileges had been reinstated in Ohio as of June 30, 2019, and thus, he was eligible for a renewal of his Pennsylvania driver's license, regardless of a NDR check. Finding that the circumstances are capable of repetition, yet may evade review due to the brief timeframes involved in license suspension cases, the court reviewed the matter regardless of its mootness. *Id.* at 1215 n.1 (citing *Harris v. Rendell*, 982 A.2d 1030, 1036 (Pa. Cmwlth. 2009), *aff'd*, 992 A.2d 121 (Pa. 2010) (internal citations omitted) (holding that "[i]t is within the court's discretion to decide substantial questions, otherwise moot, that are capable of repetition unless settled")).

On the merits of the appeal, the Commonwealth Court viewed the Department's argument as equating Linkosky's request for a duplicate camera card with a second request for license renewal, and rejected such contention. *Linkosky*, 222 A.2d at 1216.

The court agreed with the common pleas court that the case was governed by Section 1513 of the Vehicle Code, which specifically addresses the issuance of substitute driver's licenses and does not require a Register inquiry, but only "proof satisfactory to the [D]epartment that the license or permit has been mutilated, lost, stolen, destroyed, or has become illegible," and the "payment of the required fee." *Id.* (citing 75 Pa.C.S. § 1513(a)).

The Commonwealth Court recognized that, pursuant to a federal regulation, the Department is required to "submit an inquiry to both the NDR and the Commercial Driver's License Information System for each driver license applicant before issuing a license to that applicant." *Id.* (citing 23 C.F.R. § 1327.5(b)(1)). It further observed that the regulation clarifies that "[t]he issuance of a license includes but is not limited to any original, renewal, temporary, or duplicate license that results in a grant or extension of driving privileges in a participating State." *Id.* Additionally, the court acknowledged Commonwealth Court case law, which interpreted federal law as requiring the Department to check the NDR prior to issuance or renewal of a Pennsylvania driver's license. *Id.* at 1216-17 (citing *Haubert v. Dep't of Transp., Bureau of Driver Licensing*, 124 A.3d 360, 362 (Pa. Cmwlth. 2015), and *Flynn v. Dep't of Transp., Bureau of Driver Licensing*, 3 A.3d 758, 760-61 (Pa. Cmwlth. 2010)).

The Commonwealth Court concluded, however, that the enumerated federal authority is persuasive only if the court "agrees with the Department's initial characterization of [Linkosky's] December 4, 2018 request, *i.e.,* that such request constituted a second application for driver's license renewal," a claim that the court rejected. *Id.* at 1217. The court reasoned that Linkosky's request for a duplicate camera card did not trigger a NDR inquiry because his request did not seek "a grant or extension of driving privileges" or "the issuance of a license" that Linkosky did not already possess. *Id.* On that basis, the Commonwealth Court distinguished the cases of *Haubert,* which

concerned an original application for a Pennsylvania driver's license that could have granted driving privileges, and *Flynn*, which involved a renewal application that could have extended driving privileges. Unlike those cases, the court opined, Linkosky was a "duly-licensed driver in the Commonwealth" seeking only a duplicate of a lost license. *Id.* at 1218. Thus, the Commonwealth Court held that the common pleas court did not commit an error of law or an abuse of discretion in sustaining Linkosky's appeal.

This Court granted allocatur to address the following issue:

> Where Licensee's operating privilege was suspended in the State of Ohio when he applied for a duplicate Pennsylvania camera card (driver's license), did the Department of Transportation err in denying his application for the duplicate camera card in accordance with the requirements of 75 Pa.C.S. § 1503(a)(1)?

*Linkosky v. Commonwealth*, 235 A.3d 1069 (Pa. 2020).

## *II. The Parties' Arguments*[4]

The Department contends that the Commonwealth Court's ruling, that it was required to issue Linkosky a duplicate camera card at a time when his operating privileges were suspended in Ohio, is contrary to state and federal law. It submits that the court's holding ignores that a valid camera card is a valid driver's license within the Commonwealth of Pennsylvania, thereby rendering a request for a duplicate camera card the equivalent of a request for a duplicate license, which request may not be granted by the Department absent a NDR inquiry.

---

[4] Neither party contends that we should decline to entertain the issue presented in this appeal on mootness grounds, considering that Linkosky's operating privileges in Ohio have been restored. We agree with the Commonwealth Court that our review is warranted as the present circumstances are capable of repetition, yet may evade review due to the limited timeframes involved in license suspension appeals. *See Burke v. Independence Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014) (holding that exceptions to the mootness doctrine exist for issues that are, *inter alia*, capable of repetition while evading review).

In support of this contention, the Department relies on 67 Pa. Code § 73.3(b)(1), which provides expressly that a "camera card is valid as a driver's license for a period of 60 days from the date of validation by the Department." *Id.* It further cites the statutory definition of "Driver's license" as "[a] license or permit to drive a motor vehicle issued under this title." 75 Pa.C.S. § 102.

The Department next observes that Section § 1503(a)(1) of the Vehicle Code precludes it from issuing or renewing a driver's license to an individual whose operating privileges are suspended or revoked. Similarly, it asserts, federal law, specifically 49 U.S.C. § 30304(e), requires that a State request information from the Register prior to acting upon a request for issuance or renewal of a driver's license to determine if issuance or renewal is warranted.[5] The Department submits that, in conjunction with this directive, the National Highway Safety Administration promulgated a regulation detailing the federal statute's implementation at 23 CFR § 1327.5(b)(1), which provides in relevant part:

> (b) State of inquiry function for driver licensing and driver improvement purposes.
>
> (1)The chief driver licensing official of a participating State shall submit an inquiry to both the NDR and the Commercial Driver's License Information System for each driver license applicant before issuing a license to that applicant. The issuance of a license includes but is not limited to any original, renewal, temporary, or *duplicate license* that results in a grant or extension of driving privileges in a participating State.

23 CFR § 1327.5(b)(1) (emphasis added).

Emphasizing that the "issuance of a license" for purposes of Register inquiry is not limited to the original grant or renewal of a license, but expressly includes the grant of a

---

[5] Section 30304 of Title 49 provides in subsection (e) ("Driver record inquiry") that "[b]efore issuing a motor vehicle operator's license to an individual or renewing such a license, a State shall request from the Secretary information from the National Driver Register under section 30302 and the commercial driver's license information system under section 31309 on the individual's driving record." 49 U.S.C. § 30304(e).

"temporary" or "duplicate license," the Department interprets 23 CFR § 1327.5(b)(1) as requiring a NDR inquiry prior to issuing a duplicate temporary license, such as a duplicate camera card.

As it did in the lower courts, the Department acknowledges that no NDR inquiry would have been necessary if Linkosky had not lost his camera card, and instead presented the validly-issued camera card at a photo center after his Ohio operating privileges were suspended. However, it submits that what would have occurred under a different factual scenario, where no duplicate license was requested, is wholly irrelevant to this appeal. Critically here, the Department maintains, Linkosky requested a duplicate camera card/duplicate license on December 4, 2018, which triggered its obligation to conduct a NDR inquiry, which, in turn, revealed that Linkosky's operating privileges were suspended in Ohio. At that time, it contends, the Department would have violated Section 1503(a)(1) if it had issued Linkosky the requested duplicate camera card.

Contrary to the Commonwealth Court's holding, the Department contends, the issuance of a camera card, whether an original or duplicate, clearly results in "a grant or extension driving privileges" in this Commonwealth pursuant to 23 CFR § 1327.5(b)(1). In the Department's view, the Commonwealth Court's decision essentially makes the issuance of a camera card an immutable act, and ignores the change of circumstances, which rendered Linkosky ineligible for the requested duplicate camera card.

Further, the Department posits, the Commonwealth Court erroneously held that this matter was governed exclusively by consideration of Section 1513, relating to duplicate and substitute driver's licenses. Surely, the Department contends, the Pennsylvania General Assembly did not intend to violate federal law by mandating the grant of a duplicate license where the licensee's operating privileges were suspended or revoked in another state. The Department posits that Section 1513's language, directing

the grant of a duplicate license upon proof of loss of the license and payment of a fee, presumes that the licensee is not otherwise ineligible to receive the duplicate license.

In response, Linkosky does not dispute the Department's assertion that federal law requires an NDR inquiry in cases where a licensee requests the issuance of an original or renewed license. He argues, however, that this is not such a case because he sought only a duplicate camera card, as his renewal application had already been granted. He submits that the Department has cited no authority to support the proposition that a NDR inquiry must be performed prior to issuing a duplicate camera card.

Mirroring the Commonwealth Court's analysis, Linkosky contends that Section 1513 governs this matter and requires only "proof satisfactory to the [D]epartment that the license or permit has been mutilated, lost, stolen, destroyed, or has become illegible," and "payment of the required fee." Brief for Appellee at 5 (citing 75 Pa.C.S. § 1513(a)). He asserts that the Department's NDR inquiry prior to issuing the duplicate camera card and refusal to issue the card based upon information obtained therefrom conflicts with this plain language. Linkosky argues that there is no language in Section 1513 suggesting that the issuance of a duplicate license is the equivalent of the issuance of an original or renewed driver's license. Section 1513 comes into play, he contends, when the driver's license or learner's permit has been mutilated, lost, stolen, destroyed, or becomes illegible, which occurred here. Linkosky reasons that had the General Assembly "intended to treat the provision of a duplicate or substitute driver's license, camera card or learner's permit as the renewal of an existing driver's license or as the issuance of a new driver's license, the Statute would have so stated." Brief for Appellee at 5.

Linkosky echoes the Commonwealth Court's sentiment that the federal law relied upon by the Department is relevant only if the issuance or renewal of a license results in the "grant or extension of driving privileges." He agrees with that court that no driving

privileges would have been granted or extended upon the issuance of a duplicate camera card because his renewal had already been granted. Linkosky further reiterates that if he had not lost the card, he could have obtained a photo driver's license after his operating privileges were suspended in Ohio without any NDR inquiry. Thus, Linkosky concludes, it is clear that the grant of an application for a duplicate camera card under the circumstances presented is not an act that results in a grant or extension of his driving privileges. Accordingly, he requests that we affirm the order of the Commonwealth Court.

*III. Analysis*

Generally, an appellate court's standard of review in a driver licensing matter is to determine whether the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Department of Transportation, Bureau of Driver Licensing v. Boucher*, 691 A.2d 450, 453 (Pa. 1997). The issue presented by this appeal, *i.e.*, whether the Department erred by denying Linkosky's application for a duplicate camera card, is a question of law as it requires us to interpret state and federal statutes and regulations. Accordingly, our standard of review is *de novo* and our scope of review is plenary. *Shoul v. Department of Transportation, Bureau of Driver Licensing*, 173 A.3d 669, 676 n.7 (Pa. 2017).

When presented with matters of statutory interpretation, we are guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). When the words of a statute are clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). We construe words and phrases according to their common and approved usage, 1 Pa.C.S. § 1903(a), and every statute shall be construed, if possible, to give

effect to all of its provisions so that no provision is mere surplusage. 1 Pa.C.S. § 1921(a). In addition, in determining whether language is clear and unambiguous, the court should assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation. *Commonwealth v. Office of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014)

When the words of a statute are not explicit, the General Assembly's intent is to be ascertained by consulting a comprehensive list of specific factors set forth in 1 Pa.C.S. § 1921(c); *see also Pa. Associated Builders & Contrs., Inc. v. Commonwealth Dep't of Gen. Servs.*, 932 A.2d 1271, 1278 (Pa. 2007) (recognizing that when "the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations"). Finally, "as a general matter, we employ the interpretative principles of the [Statutory Construction Act] to construe a regulation implementing a legislative enactment." *S & H Transp., Inc.*, v. City of York, 210 A.3d 1028, 1038 (Pa. 2019).

Initially, we observe that while the crux of the issue concerns the Department's denial of Linkosky's application for a duplicate camera card, the term "camera card" does not appear in the provisions of the Vehicle Code relied upon by either of the parties. In fact, the General Assembly did not employ that term in the Vehicle Code at all. As noted, however, a camera card is addressed in the Pennsylvania Administrative Code in Title 67, Chapter 73, which "provides standards and procedures for the issuance, renewal and replacement of photographic driver's licenses as provided for in 75 Pa.C.S. § 1510(a) (relating to issuance and content of driver's license)." 67 Pa. Code § 73.1.

As set forth *supra*, Section 73.3(b)(1) of the Pennsylvania Code provides:

A qualified applicant for renewal, replacement or initial issuance of a driver's license shall receive a camera card which may be used to receive a photographic or valid without photo driver's license until the expiration date specified on the camera card. The camera card is valid as a driver's license for a period of 60 days from the date of validation by the Department.

67 Pa. Code. § 73.3(b)(1).[6]

This provision establishes that a camera card is, in fact, a driver's license to be utilized by the licensee for a temporary duration, up to sixty days, until the licensee presents the card at a photo license center to obtain a photographic driver's license. *See also* 75 Pa.C.S. § 102 (defining "Driver's license" as "[a] license or permit to drive a motor vehicle issued under this title"). Thus, the question becomes whether the Department may check the Register prior to granting Linkosky's application for a duplicate camera card/duplicate temporary license, and deny the application based on information gleaned from its inquiry.

To resolve this inquiry, we first elaborate on the nature and purpose of the NDR. The NDR is a division of the National Center for Statistics and Analysis under the National Highway Traffic Safety Administration. The NDR maintains the computerized database known as the Problem Driver Pointer System, which contains data relating to individuals whose operating privileges have been suspended or revoked or who have been convicted

---

[6] We acknowledge that Section 73.3(b)(2) states that "[i]f a camera card is mutilated, lost, stolen, destroyed or becomes illegible, the person to whom it was issued shall obtain a replacement camera card upon payment of the required fee." 67 Pa. Code. § 73.3(b)(2). This language tracks the statutory text of Section 1513 of the Vehicle Code. For the reasons set forth *infra*, however, we find that this language, in isolation, is not dispositive of this appeal. *See Commonwealth v. Office of Open Records*, 103 A.3d at 1285 (providing that in determining whether language is clear and unambiguous, the court must assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation). We further note that neither party relies upon this particular subsection of the Pennsylvania Code in its arguments to this Court.

of serious traffic-related offenses. The NDR was established in 1982 by the enactment of 49 U.S.C. § 30302, with the primary purpose of assisting the chief driver licensing officials of participating States in exchanging information about the motor vehicle driving records of individuals. *Id.*

The enabling legislation directs the chief driver licensing official of each participating State to submit to the Secretary of Transportation a report for each individual who is denied a driver's license by that State; whose license is revoked, suspended, or canceled by that State; or who is convicted in that State of enumerated traffic offenses, including driving under the influence of alcohol or a controlled substance. *Id.* § 30304(a). The report must contain information such as the individual's name, date of birth, sex, social security number or driver's license number, and the name of the participating State. *Id.* § 30304(b). Notably, prior to issuing a motor vehicle operator's license or renewing such a license, a participating State is required to request information from the NDR on the individual's driving record. *Id.* § 30304(e).

To determine whether this federal statute's mandate (that a participating State may not issue or renew a driver's license absent NDR inquiry) applies to Linkosky's request for the issuance of a temporary duplicate license such as the duplicate camera card, we look to Chapter III of Title 23 of the Code of Federal Regulations, which details the federal statute's implementation by providing procedures for States to participate in the NDR.

Relevant here, as highlighted by the Department, 23 CFR 1327.5(b) is critical to this appeal and its text bears repeating. Section 1327.5(b), entitled "State of inquiry function for driver licensing and driver improvement purposes" provides:

> (1) The chief driver licensing official of a participating State shall submit an inquiry to both the NDR and the Commercial Driver's License Information System for each driver license applicant before issuing a license to that applicant. The issuance of a license includes but is not limited to any

original, renewal, temporary, or duplicate license that results in a grant or extension of driving privileges in a participating State.

(2) The chief driver licensing official of a participating State may submit inquiries for other driver licensing and driver improvement purposes.

23 CFR § 1327.5(b).

This federal regulation, governing the inquiry functions of chief licensing officials for driver licensing purposes, directs such officials to inquire with the NDR before issuing an original driver's license, a renewed driver's license, a temporary driver's license, and a duplicate license that results in a grant or extension of driving privileges. *See also* 23 CFR 1327.3 (defining "[d]river licensing purposes" as "information requests made by chief driver licensing officials to determine if individuals applying for original, renewal, temporary, or duplicate licenses have had their driving privileges withdrawn in some other State). This language unmistakably equates the issuance of a temporary or duplicate license with the issuance of an original or renewed license for purposes of Register inquiry.[7]

Further, we conclude that the issuance of a duplicate temporary license "grants or extends driving privileges" because without the issuance of the duplicate, the individual possesses no driver's license. That the Department had already granted Linkosky's renewal of his license at the time he requested the duplicate license is of no moment. It is the request for the duplicate temporary license that triggers the NDR inquiry under the express terms of 23 CFR § 1327.5(b). Thus, what would have occurred if Linkosky had not lost his camera card is simply not relevant to this appeal.

Accordingly, because Linkosky requested a duplicate temporary license in the form of a duplicate camera card, the Department had a duty to make an inquiry with the

---

[7] Moreover, Subsection 1327.5(b)(2) clarifies that chief driver licensing officials may submit NDR inquiries for other "driver licensing and driver improvement purposes" in addition to those set forth in Subsection 1327.5(b)(1).

Register prior to issuing the license and did not err by denying the license based upon information gleaned from the NDR, namely that Linkosky's operating privileges in Ohio were suspended at that time. We agree with the Department's assertion that had it granted Linkosky's request for a duplicate temporary license while his operating privileges were suspended in Ohio, it would have violated Section 1503(1) of the Vehicle Code (providing that the Department "shall not issue a driver's license to, or renew the driver's license of, any person . . . [w]hose operating privilege is suspended or revoked in this or any other state"). 75 Pa.C.S. § 1503.

Our holding in this regard does not conflict with Section 1513 of the Vehicle Code, which, as noted, provides:

> (a) General rule. — If a learner's permit or driver's license issued under the provisions of this chapter is mutilated, lost, stolen, destroyed or becomes illegible, the person to whom it was issued, upon furnishing proof satisfactory to the department that the license or permit has been mutilated, lost, stolen, destroyed, or has become illegible, shall obtain a duplicate or substitute license or permit upon payment of the required fee.

75 Pa.C.S. § 1513(a).

Linkosky and the lower courts interpret this provision as a mandatory requirement that once proof of loss is established and payment of a fee is remitted, the licensee has a statutory right to receive a duplicate camera license, and the Department has no discretion to deny a request for a duplicate based upon information obtained from an inquiry with the NDR. Respectfully, this proffered interpretation of Section 1513 is unpersuasive as it is not supported by the plain text of the provision itself. Notably, the General Assembly employed the term "General rule" to preface the directive that a licensee shall obtain a duplicate license upon proof of loss and payment of the required fee. This language makes clear that the enumerated directive is not without exception. To the contrary, adopting Linkosky's position would render such language ineffectual, as

it would allow for no circumstance where the Department could exercise discretion to deny a request for a duplicate license, regardless of what traffic-related events may have transpired involving the licensee since the license was renewed or issued, so long as the licensee demonstrated that the license was lost and the requisite payment remitted. It is clear that the General Assembly did not intend such a stringent result when it employed the "General rule" language in the statutory text.

We acknowledge that Section 1513 does not contemplate expressly that the Department deny a request for a duplicate license based upon information of a suspension or revocation of driving privileges in another state, as discovered upon inquiry with the NDR. The provision, however, in no way precludes the same, and the Department is obligated to abide by both state and federal law when rendering licensing decisions. Thus, the lower courts erred in holding that Section 1513 exclusively governs this matter and precludes the Department from checking the NDR in this circumstance. Instead, we agree with the Department that application of Section 1513's general rule, directing the grant of a duplicate license upon proof of loss and payment of a fee, presumes that the licensee is not otherwise ineligible to receive the duplicate license. Here, upon checking the NDR, the Department learned that Linkosky was not eligible to receive a duplicate license and, thus, properly denied his application on that basis.

It is for these reasons that we reverse the order of the Commonwealth Court, which affirmed the trial court's sustaining of Linkosky's statutory appeal.

Chief Justice Saylor and Justices Dougherty, Wecht and Mundy join the opinion.

Justice Donohue files a dissenting opinion in which Justice Todd joins.