# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dana R. Jackson,               :
               Appellant     :
                              :
         v.                 :    No. 1073 C.D. 2017
                              :    Submitted: June 6, 2018
Commonwealth of Pennsylvania,     :
Department of Transportation,      :
Bureau of Driver Licensing        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge

**OPINION**
**BY JUDGE SIMPSON**                **FILED: JULY 24, 2018**

      In this license suspension appeal involving a single suspension from the refusal of two separate requests for chemical testing, Dana R. Jackson (Licensee) appeals an order of the Court of Common Pleas of Cumberland County[1] (trial court) that denied his statutory appeal from the Department of Transportation, Bureau of Driver Licensing's (Department) suspension of his operating privilege. The Department suspended Licensee under 75 Pa. C.S. §1547(b)(1)(ii) based on his refusal to submit to chemical testing after being arrested for driving under the influence of alcohol or controlled substance (DUI), a violation of 75 Pa. C.S. §3802. Licensee contends the trial court erred in denying his appeal because the arresting officer failed to read the enhanced criminal penalty provisions in 75 Pa. C.S. §1547(b)(2)(ii) prior to requesting that Licensee submit to a chemical breath test.

---

[1] The Honorable Albert H. Masland presided.

Licensee argues his position is consistent with the U.S. Supreme Court's decision in Birchfield v. North Dakota, 579 U.S. ___, 136 S.Ct. 2160 (2016). Licensee further argues the Department failed to establish that the arresting officer read the proper implied consent warnings for a chemical blood test at the scene of the arrest. Upon review, we affirm.

## I. Background

On February 25, 2017, Upper Allen Township Police Officer Thomas J. Dombrowski (Arresting Officer), responding to a dispatch regarding a harassment complaint lodged against Licensee by his ex-girlfriend, noticed Licensee's vehicle parked by the complainant's residence. As Arresting Officer approached the residence, he observed Licensee walking away from the residence. Arresting Officer spoke to Licensee, who provided him with his photo identification. The officer noticed that Licensee's clothing appeared disheveled, and his eyes were bloodshot and glassy. When Licensee spoke, Arresting Officer smelled a strong odor of alcohol emanating from his breath.

Arresting Officer then took Licensee to the complainant's residence. While waiting for the complainant to answer the door, the officer observed that Licensee slurred his speech. Licensee also showed other common signs of intoxication. After speaking to the complainant, Arresting Officer and Licensee walked to the patrol vehicle. The officer confirmed that Cumberland County had an active bench warrant for him. Arresting Officer placed Licensee under arrest based on the warrant. The officer also advised Licensee that he was under arrest for public drunkenness.

2

Arresting Officer then returned to the residence and confirmed with the complainant that she observed Licensee driving his vehicle just minutes prior to the officer's arrival. The officer located Licensee's vehicle and touched its hood, which was still warm. Arresting Officer then checked the vehicle's registration, confirming it was Licensee's vehicle.

Arresting Officer then returned to his vehicle and asked Licensee to submit to a blood test for DUI. Licensee did not consent to the blood test. Arresting Officer next read Licensee the implied consent warnings for chemical testing from a handheld card he keeps on his person.

While Arresting Officer read the warnings, Licensee attempted to yell at the complainant. Licensee also requested to speak with his attorney. When he finished reading the warnings, Arresting Officer asked Licensee if he would consent to a blood test. Licensee either said no or asked to speak to his attorney. At that point, Arresting Officer advised Licensee that if he did not provide an answer, it would constitute a refusal. Licensee, however, failed to provide an answer.

After reading Licensee the warnings, Arresting Officer asked Licensee if he understood them. Licensee replied no. Arresting Officer then paraphrased the warnings and continued to explain them. Licensee, however, continued to request an attorney.

3

Arresting Officer then transported Licensee to the prison booking center. The officer noticed an Intoxilyzer machine, and he provided Licensee with an opportunity to consent to a chemical breath test. This time, Arresting Officer read the warnings directly from a DL-26A (breath test) Form to Licensee. Although Licensee listened to the warnings, he had some questions and continued to request an attorney. After a few minutes, Arresting Officer asked Licensee if he would consent to the breath test. Ultimately, Licensee said no; he also refused to sign the DL-26A Form. After Licensee's second refusal, the officer left him in the custody of the booking agents.

In March 2017, the Department mailed Licensee a notice of suspension advising him that his driving privilege would be suspended for a period of 18 months for a violation of 75 Pa. C.S. §1547(b)(1)(ii) based on his refusal to submit to chemical testing. Licensee filed a timely statutory appeal of the notice of suspension.

In July 2017, the trial court held a hearing on Licensee's appeal. The Department submitted Licensee's driving record, which included a certified record of an earlier 18-month suspension based on a January 2009 misdemeanor one DUI conviction (highest rate of alcohol - .16+). See Tr. Ct. Hr'g, 7/5/17, Commonwealth Ex. 1, Document Nos. 1-5. The Department explained that if a licensee's record shows a prior DUI or refusal, a subsequent refusal warrants an 18-month suspension. Tr. Ct. Hr'g, Notes of Testimony (N.T.), 7/5/17, at 5. Licensee did not object to the admission of these documents. Id. at 6.

The Department also called Arresting Officer as a witness. He testified regarding the circumstances of Licensee's arrest. The officer further testified regarding Licensee's refusal to submit to a blood test and his subsequent refusal to submit to a breath test. Following Licensee's cross-examination of Arresting Officer, the Department rested.

Licensee chose not to testify or present any other evidence. However, Licensee's counsel made an oral argument regarding Arresting Officer's failure to warn Licensee that he could face enhanced penalties if he did not submit to a breath test. Specifically, Licensee's counsel argued:

> I don't believe that this form complies with [75 Pa. C.S. §1547]. [Section] 1547 expressly states that an individual must be warned that [he] could face the enhanced criminal penalties provided in [75 Pa. C.S. §3804(c)] if they [sic] refuse to submit to testing. Post <u>Birchfield</u> the form was amended for blood tests. There was a DL-26B. This just appears to be DL-26A with part of it blanked out. So in the blood context, the form wasn't even read that ignored the enhanced penalties. That is not sufficient clearly for breath. I don't think there can be a dispute as to that on the breath test. And, again, this was a sole form submitted to [the Department] as a basis for the refusal.
>
> * * * *
>
> So, because the sole form is a breath test and it did not comply with [75 Pa. C.S. §1547], and <u>Birchfield</u> in no way changes the consequences, I believe that the license should be reinstated. And, again, even if it is a blood test, I don't believe the [s]tatute can be severed when you are essentially adding a provision.

N.T. at 35-36.

5

Licensee's counsel also pointed out that the warnings Arresting Officer read in the field for the blood test were on some type of card. According to Licensee's counsel, the Department did not present any testimony or documentary evidence as to what was included on the card or whether it complied with the Implied Consent Law, 75 Pa. C.S. §1547(a), (b). See N.T. at 43.

Following argument, the trial court held that the Department proved each and every element of its case. To that end, the trial court reasoned: "There was no question in the mind of the officer, nor is there any question in the mind of the Court, that [Licensee] was refusing and asking for an attorney and asking a question does not change that at all." N.T. at 45. Licensee appeals.[2]

## II. Discussion

### A. Chemical Test Warnings (Generally)

Licensee contends the trial court erred in upholding his suspension because Arresting Officer failed to read him the enhanced criminal penalty language in 75 Pa. C.S. §1547(b)(2)(ii) prior to requesting a breath test. This provision requires that the officer notify the licensee that upon conviction or plea for violating 75 Pa. C.S. §3802(a)(1) (DUI), the licensee will be subject to the penalties in 75 Pa. C.S. §3804(c), prior to requesting that he submit to a chemical breath test. Section 3804(c) provides:

---

[2] Our review in a license suspension appeal is limited to determining whether the trial court's necessary findings of fact were supported by substantial evidence and whether the trial court committed an error of law or otherwise abused its discretion. Dep't of Transp., Bureau of Traffic Safety v. O'Connell, 555 A.2d 873 (Pa. 1989); Marchese v. Commonwealth, 169 A.3d 733 (Pa. Cmwlth. 2017), appeal denied, ___ A.3d ___ (Pa., No. 681 MAL 2017, March 12, 2018).

**(c) Incapacity; highest blood alcohol; controlled substances.**—An individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates … shall be sentenced as follows:

(1) For a first offense, to:

(i) undergo imprisonment of not less than 72 consecutive hours;

(ii) pay a fine of not less than $1,000 nor more than $5,000 ….

75 Pa. C.S. §3804(c)(1) (i), (ii) (emphasis by underline added). The terms of imprisonment and fines increase for second and third offenses. See 75 Pa. C.S. §3804(c)(2), (3).


## B. Blood Test Refusal

We first address Licensee's refusal of the request for a chemical blood test. To sustain a suspension of a licensee's operating privilege under the Implied Consent Law, the Department must establish the licensee: (1) was arrested for DUI by a police officer with reasonable grounds to believe the licensee was operating a vehicle while under the influence of alcohol or a controlled substance; (2) was requested to submit to chemical testing; (3) refused to submit to chemical testing; and (4) was warned by the officer that his license would be suspended if he refused to submit to chemical testing. Boseman v. Dep't of Transp., Bureau of Driver Licensing, 157 A.3d 10 (Pa. Cmwlth. 2017).

Here, the trial court found Arresting Officer's testimony credible. N.T. at 44-45. The officer testified that after encountering Licensee in an intoxicated state

near his ex-girlfriend's residence, he arrested him on an outstanding bench warrant and on a charge of public drunkenness.  Id. at 9-14, 37.

After securing Licensee in the backseat of his patrol vehicle with another officer present, Arresting Officer verified that Licensee drove to the scene. The officer returned to the residence and spoke with Licensee's ex-girlfriend, who observed him driving around the area just minutes before the officer arrived.  Id. at 14-15.  Arresting Officer also checked a vehicle registered to Licensee; he felt the hood, which was still warm.  Id. at 15.  The officer also observed a small "shot bottle" of Rumplemintz, a peppermint liqueur, on the front seat of the vehicle, and what looked like an alcohol container in the back.  Id. at 15-16.

When Arresting Officer returned to his patrol car, he asked Licensee if he would consent to a chemical blood test for DUI.  Id. at 16.  The officer told Licensee that a witness observed him driving.  Id.  Licensee became belligerent and responded that he would not consent to the blood test.  Id. at 16-17.

At that point, Arresting Officer read Licensee the chemical test warnings from a handheld card.  Id. at 17.  Arresting Officer testified that the card has the warnings on the DL-26A (breath test) Form "verbatim."  Id.  After he read the warnings, he again asked Licensee if he would consent to a blood test.  Id. at 18. The officer recalled that Licensee either did not answer him or asked to speak to his attorney.  Id.  Arresting Officer then advised Licensee that if he did not answer, his silence would constitute a refusal.  Id.  Licensee, however, did not answer.  Id.

8

The warnings Arresting Officer read to Licensee did not include a warning that refusal to submit to a chemical blood test would result in enhanced criminal penalties under 75 Pa. C.S. §3804(c). As such, the warnings Arresting Officer read at the scene of the arrest were legally sufficient under Birchfield for a blood test. Garlick v. Dep't of Transp., Bureau of Driver Licensing, 176 A.3d 1030 (Pa. Cmwlth. 2018). Therefore, we discern no error or abuse of discretion in the trial court's determination that the Department established its *prima facie* case for a suspension of Licensee's driving privilege based on Licensee's refusals of the blood test at the scene of his arrest. Garlick; Boseman.

Licensee, however, argues the Department failed to establish that Arresting Officer read the proper warnings for the blood test request because the Department never entered into evidence the card from which Arresting Officer read. In addition, Arresting Officer never testified to the language on the card. Therefore, Licensee maintains there were fatal flaws with the warnings for the blood test.

We disagree. Arresting Officer testified that the warnings he read from the card were the warnings in the DL-26A Form "verbatim." N.T. at 17. Although the DL-26A Form stated "Use For Breath Test" (Commonwealth Ex. 1, Document No. 2), Arresting Officer credibly testified that at the scene of the arrest he asked Licensee to submit to a blood test (N.T. at 16). The DL-26A Form provides (with emphasis added):

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for [DUI] in violation of [75 Pa. C.S. §3802].

9

2. I am requesting that you submit to a chemical test of <u>breath</u>.

3. If you refuse to submit to the <u>breath</u> test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of [DUI], you will be suspended for up to 18 months.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a <u>breath</u> test, you will have refused the test.

Commonwealth Ex. 1, Document No. 2.

Although the DL-26A Form used the word "breath" instead of "blood," Arresting Officer credibly testified that he requested a blood test, not a breath test, at the scene of the arrest. N.T. at 16. Licensee failed to present any evidence or even allege that Arresting Officer read the word "breath" instead of "blood" when giving the warnings for the blood test. Given Arresting Officer's testimony and the trial court's credibility findings, we are persuaded that Arresting Officer read the proper warnings for a request for a chemical blood test under 75 Pa. C.S. §1547(b)(2). <u>Garlick</u>; <u>Boseman</u>.

### C. Breath Test Refusal

Nevertheless, Licensee asserts that unlike a blood test, existing case law clearly states that a motorist may still face enhanced criminal penalties for refusing a breath test. Therefore, he argues, the enhanced criminal penalties language in 75

Pa. C.S. §1547(b)(2)(ii) remains accurate regarding a refusal to consent to a chemical breath test. Consequently, Licensee argues that Arresting Officer's failure to read the enhanced penalty provision when requesting that Licensee submit to a breath test rendered his suspension improper.

However, having determined that Licensee was properly warned of the consequences of refusal of a blood draw at the time of his arrest, Licensee's subsequent, additional refusal of a breath test has no impact on the Department's authority to order a single suspension of his driving privilege. Stated differently, the sufficiency of the warnings preceding Licensee's subsequent, additional refusal is irrelevant here, where only one license suspension is involved.

In Olbrish v. Department of Transportation, Bureau of Driver Licensing, 619 A.2d 397 (Pa. Cmwlth. 1992) (deemed refusal of breath test, subsequent deemed refusal of blood draw; occurrences subsequent to initial refusal "irrelevant"), we stated that a waiver of the first refusal may occur where there is a chemical test refusal and the police officer then offers a second test, *which the licensee successfully completes*. Id. at 399 n.3 (emphasis in original). In Olbrish we determined that where a licensee refuses chemical testing, any subsequent offers to submit to chemical testing are at most gratuitous and could be revoked at any time before the test is administered. Thus, a licensee has no right to have another test administered after the initial refusal. Olbrish; Geonnotti v. Dep't of Transp., Bureau of Driver Licensing, 588 A.2d 1343 (Pa. Cmwlth. 1991) (refusal of breath test, subsequent additional refusal of breath test, subsequent agreement for breath test, but test not administered because too much time passed). In short, usually a licensee

11

cannot improve his position by multiple refusals, hoping that sufficient time passes or that the police will ultimately make a mistake.

In this case, no waiver of the first refusal occurred, because Licensee did not successfully complete any testing. Licensee does not argue to the contrary, nor does he cite any legal authority supporting the proposition that his first refusal was somehow vitiated. Having rejected Licensee's arguments regarding his refusal for a blood test at the time of arrest, we conclude that refusal was sufficient to support the Department's single suspension here.

### III. Conclusion

For the above reasons, we discern no error in the trial court's order denying Licensee's statutory appeal of his civil license suspension. Accordingly, we affirm. Further, we grant the Department's request to reinstate the 18-month suspension of Licensee's operating privilege under 75 Pa. C.S. §1547(b)(1)(ii) within a reasonable time.

_____
ROBERT SIMPSON, Judge

12

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Dana R. Jackson, : 
                 Appellant : 
                 : 
           v. :   No. 1073 C.D. 2017 
                 : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

# O R D E R

**AND NOW**, this 24th day of July, 2018, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Cumberland County is **AFFIRMED**. Further, the Department of Transportation, Bureau of Driver Licensing, is hereby directed to **REINSTATE** the 18-month suspension of Dana R. Jackson's operating privilege under 75 Pa. C.S. §1547(b)(1)(ii) within a reasonable time.

ROBERT SIMPSON, Judge

Dana R. Jackson, : 
                  Appellant : 
           : 
          v. : No. 1073 C.D. 2017
           : Submitted: June 6, 2018
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge

**CONCURRING OPINION**
**BY JUDGE BROBSON**            **FILED: July 24, 2018**

Although it appears undisputed that the arresting police officer failed to warn Dana R. Jackson (Licensee) that his refusal to submit to a breath test could lead to enhanced criminal penalties, the license suspension at issue here stems from Licensee's refusal to submit to an earlier blood test. I agree with the majority that the arresting police officer properly warned Licensee of the consequences of his refusal to submit to a blood test at the time of his arrest. Accordingly, based on the issues raised on appeal and my review of the record, I join in the majority's disposition of this matter.

Given the spate of litigation over implied consent warnings spawned by the United States Supreme Court's decision in *Birchfield v. North Dakota*,

136 S. Ct. 2160 (2016), I write separately to comment on this Court's decision in *Olbrish v. Department of Transportation, Bureau of Driver Licensing*, 619 A.2d 397 (Pa. Cmwlth. 1992). In *Olbrish*, this Court observed that a police officer's offer of a follow-up test following a refusal was, at best, gratuitous and could be revoked at any time prior to the completion of the test. Nonetheless, we cautioned: "[O]ur holding here is not all encompassing. Where there is a refusal and the police then gratuitously offer a second test *which the licensee successfully completes*, a waiver of the first refusal may occur." *Olbrish*, 619 A.2d at 399 n.3 (emphasis in original).

Here, the arresting officer gratuitously offered a chemical breath test after Licensee refused to submit to a blood test. Licensee did not consent and thus did not complete the breath test. That is where the majority's discussion of *Olbrish* ends. I do not, however, read the majority's opinion as excusing a police officer who makes a gratuitous offer of alternative testing from providing accurate implied consent warnings. It seems to me that *Olbrish* creates some sort of opportunity (if not a right) for a licensee to remedy his prior refusal by accepting a subsequent offer for alternative testing and completing the test. The unanswered question is whether the licensee *in that situation* is entitled to an accurate warning of the consequences of refusing the offer. When or if the issue is raised and sufficiently developed, this or another court may determine that because the offer is gratuitous, *no* warnings at all are necessary and, consequently, even an inaccurate warning, such as the case here, is inconsequential. For now, however, this is an open question.

_____
P. KEVIN BROBSON, Judge

PKB-2